ZEPHIRIN BLOUIN, and another, executor in equity, vs. ANGIE HORTENSE PHANEUF, and another.

Androscoggin. · Opinion January 5, 1889.

*Will. Life Insurance. Bequest. Annuity. Trust. Residuary clause. R. S., c. 75, § 10.*

Whether a testator can by will dispose of money accruing from an insurance on his life and made payable to his legal representatives, the estate being solvent, *quere.*

The intention to thus dispose of it cannot be inferred from general provisions in his will the fulfillment of which might require the use of such money.

A bequest to the testator's wife of the sum of $50 per month for the support and maintenance of herself and daughter, to be paid monthly from the income of his estate, and on the marriage of the daughter her support to cease, creates a trust in the widow, one-half of the annuity to be applied for her own support, and the other for the support of the daughter during the life of the widow.

*Also held,* that the widow and daughter hold equal shares as tenants in common, and in case the widow waives her provision under the will her half will fall into the residuary fund and the daughter's continue.

ON REPORT.    Bill in equity to obtain the construction of the will of Magloire Phaneuf, late of Lewiston, deceased, and came before the court for hearing on bill, answers and proof.

The questions presented for decision relate to the proper disposition of money derived from life insurance, and a bequest to the widow for her support and that of her daughter, the former having waived the provisions of the will in her favor.

*G. C. and C. E. Wing,* for complainants.

Counsel argued that the insurance money passed by the will. The size of the bequests proves such was the testator's intention and belief; his estate would not justify such large bequest unless it would be included.

Fifty dollars per month given to the wife from the income could not be produced without the insurance money, and would have to be taken from property conveyed in trust, under the next item of the will.

The widow having waived the provisions of the will this legacy to her goes into the general trust fund; what is said in item 4 as to the maintenance of the daughter is simply the testator's request for the legacy to be used for that purpose.

We submit that the case of *Loring* v. *Loring*, 100 Mass. 340, while similar to this, lacks some of the essential features, and that the case of *Rich* v. *Rogers*, 80 Mass. 174, where the opinion is drawn by the same judge, is nearer the case at bar.

We therefore, cite the latter case and the cases mentioned in the opinion in support of this position, and also Jar. Wills, 5th Am. Ed., vol. 1, pp. 701–702.

The legacy is to the widow with the testator's motive pointed out. *Hathaway* v. *Sherman*, 61 Maine, 466, was a case where the estate was insolvent.

Counsel also cited: *Biddles* v. *Biddles*, 16 Sim. 1, and *Byne* v. *Blackburn*, 26 Beav. 41.

*Frye, Cotton and White*, for respondents.

The first question is whether the money arising from certain insurance policies upon the testator's life, is disposed of by this will.

The case of *Hathaway* v. *Sherman*, 61 Maine, 466, is decisive. We are unable to discover any grounds upon which the cases can be distinguished. The statement of facts in that case, page 468, says that the policies were "on his own life, and payable to himself or his administrator." An examination of the policies of this case will show that these policies are the same.

There is no reference to the policies or the money to be derived from them in this will. In the case above cited the court say: "The testator's intention to change the direction which the law gives to this very peculiar species of property is not to be inferred from general provisions in the will, the fulfillment of which might require the use of such money, but must be explicitly declared." And the same case also distinctly states that it will not pass by any general residuary clause.

The second question is whether a testator, leaving a widow and children, can bestow by will insurance money payable as this is, upon any other persons than such widow and children.

The case of *Hathaway* v. *Sherman* has distinctly held that "the power to dispose of such a fund by will, conferred by R. S., c. 75, § 10, is limited, in case of insolvency, to a disposition among the widow and children of the deceased," leaving unanswered the question as to whether a solvent testator might not dispose of it to others.

After a careful, but futile search for some additional authority covering this precise point we come back to the statement of Judge Barrows in the case cited, "that the object of this statute seems to have been to designate this very peculiar species of property as a disposition of his funds in advance, which any man may make so firmly that, with the exception of certain premiums paid to secure it, the whole shall go after his death, for the benefit and enjoyment of those who are in general dependent upon him for support while he lives, * * * and to give him power simply to regulate the proportions in which it should be divided among those interested, according to his view of their necessities, or their deserts."

And again in the same case, "a man who makes an investment of this sort, with these statutes before him, should understand that he makes it for the exclusive benefit of his widow or issue or some of them, if they or any of them survive him, and that in case of such survivorship, his testamentary power over it extends only to the designation of those among them who shall receive it, and the share which each or any shall respectively receive."

We do not think that the legislature ever intended to make the solvency of the testator the test of his right to dispose of this fund by will to others.

If he leaves no widow or issue he may dispose of it by will whether solvent or insolvent, the same as he can his other property, but such a testator cannot dispose of it by will if insolvent so as to prevent its being taken for the payment of his debts any more than he can his other property.

If he leaves a widow or issue, he may dispose of it by will, whether solvent or not. "Though the estate is insolvent" is the language of the present statute; "notwithstanding the insolvency of the estate" is the language of the original statute, but this right

to dispose of this fund by will is subject to the important qualification that he cannot bestow it upon any others than his widow or issue.

The language of the original statute clearly limited the right to dispose of this fund by will, "to a distribution of such sum among his widow and issue, or either of them, in any other proportion;" that is, in any proportion other than that designated by the statute, which was the same as the present, one-third to the widow, and two-thirds to the issue, etc.

The inability to change the direction of this fund does not depend upon the solvency of the testator at his decease, but upon the character of the fund itself. It is a "disposition of his funds in advance" for the benefit of certain persons, and the only disability he is under in regard to it is that he cannot take it away from them, although he may make a different apportionment of it among them.

The third question involves a construction of item 4 of the will.

This item gives to the wife by name, "for and during the term of her natural life, the sum of fifty dollars per month for the support and maintenance of herself and my daughter" to be paid monthly from the income of the estate.

The widow has waived the provisions of the will, and the question now arises as to how much of this monthly legacy the widow is entitled to receive for the support of the daughter, and how she holds the same; that is, whether as a testamentary trustee or not.

Upon this branch of the case we cite *Loring* v. *Loring*, 100 Mass. 340, in which case the language of the bequest was: "for her benefit and support, and the support of my son," and the court held that this created a trust, "the income of one-half to be applied for her own benefit and support, and the other to the support of the son."

And see Perry's Trusts, vol. 1, § 117.

VIRGIN, J. In addition to some $12,000 worth of real and personal estate exceeding the debts and charges of administration, the testator left four life policies of insurance,—one for $5,000 and three for $2,000 each, all payable to his legal representatives.

One of the questions submitted is: Whether the money derived from the policies goes under the residuary clause to the trustees, or descends under the provisions of R. S., c. 75, § 10, to the testator's widow and only daughter,—the estate being solvent.

Whether a solvent testator can bequeath insurance money to persons other than his widow and child, we have no occasion now to inquire, since we find no such well declared intention as the law requires expressed in the will before us. To be sure there are some indirect, inferential indications that the testator may have supposed that this money formed a part of the fund from . which some of his bequests were to be paid; but that is not sufficient. "To dispose of money accuring from life insurance policies in a manner different from that which the law contemplates," said Barrows, J., "the testator must use language directly significant of his intention in this respect; classed by the legislature as this fund is, it is not to be appropriated to the payment of debts, or of any pecuniary legacies couched in general terms merely, even to the widows and children, unless it is expressly referred to as the fund from which such payment is to be made, and it does not pass by any residuary clause. In short, the testator's intention to change the direction which the law gives to this very peculiar species of property, is not to be inferred from general provisions in his will the fulfillment of which might require the use of such money, but must be explicitly declared." *Hathaway* v. *Sherman*, 61 Maine, 466, 476–7.

We are of opinion, therefore, that the money which accrued from the life policies goes in accordance with the provisions of R. S., c. 75, § 10,—one-third to the widow and the remainder to his daughter.

Another question calls for the construction of the fourth item of the will, the first clause of which is: "I give and bequeath to my beloved wife Angie, for and during the term of her natural life, the sum of $50 per month for the support and maintenance of herself and my daughter Beatrice, to be paid monthly from the income of my estate, and on the marriage of my said daughter her support to cease."

Did the testator intend to make this annuity an absolute gift

to his wife, merely stating the motive therefor to be the support and maintenance of herself and daughter, or did he intend to create a trust and impose an obligation on his wife to appropriate it to the purposes mentioned?

The bequest points out with reasonable certainty the property, the persons in whose behalf it is given, the object and the manner of application,—which are the elements of a trust. *Malim* v. *Keighley*, 2 Ves. Jr. 323, 529. *Warren* v. *Bates*, 98 Mass. 277; Pom. Eq. § 1009. And we think the true construction of the bequest is found in that numerous class of cases wherein property was given to a parent, or some one standing *in loco parentis*, with various expressions concerning the maintenance of the donee and children. In which cases the courts have generally held that a trust is implied from such and similar language though no express trust is thereby declared, unless other language in the will shall be such as to control it.

Thus, in Hill Tr. 65, it is said: "When a gift in a will is expressed to be at the disposal of the donee for herself and children, or towards her support and that of her family * * the terms employed have been held sufficient to fasten a trust on the conscience of the donee." To the same effect Perry Tr. § 117; Pom. Eq. § 1012.

In *Jubber* v. *Jubber*, 9 Sim. 503, the bequest was to the testator's wife for the benefit of herself and unmarried children, that they may be comfortably provided for during his wife's life; and the widow and unmarried daughters were held entitled in equal shares to the income during the widow's life. See also *Cole* v. *Littlefield*, 35 Maine, 439, 445; *Chase* v. *Chase*, 2 Allen, 101; *Loring* v. *Loring*, 100 Mass. 340, especially in point. *Bristol* v. *Austin*, 40 Conn. 438, 443; *Smith* v. *Bowen*, 35 N. Y. 83.

Not only does the language adopted, in giving the annuity and defining its object, indicate the testator's intention of his daughter being supported out of it, but that intention is made certain by the provision in the same sentence: "and on the marriage of my said daughter, her support to cease."

The clause that "the bequest to my said wife is to be in lieu of dower" does not impress us as affecting the construction of implied.

trust, for the sum she would realize from the trust would be more advantageous to her than dower. Nor does the fact that two bequests to his daughter contained in the residuary clause are made expressly "subject to the bequest of $50 as hereinbefore bequeathed to my said wife" derogate from his intention as we have construed it. That only indicates the desires of a husband that his wife should be comfortably supported out of the sum given or for good cause increased; but also the anxiety of a father for the support of his young daughter; and hence he expressly subjected the bequests which she was to realize after her majority to that which he had deemed necessary during the fourteen years of her minority, unless in the meantime she should marry.

Our opinion, therefore, is that the wife and the daughter were entitled in equal shares of $25 each as tenants in common, the mother holding the same in trust. And if the widow waives her provision under the will her share would fall into the residuary fund and the daughter's share remain for her. This does not injuriously affect the daughter as she is residuary legatee.

*Decree accordingly.*

PETERS, C. J., WALTON, DANFORTH, EMERY AND HASKELL, JJ., concurred.