HENRY W. GOLDER, and another, Executors,

*vs.*

ROSIE E. CHANDLER, and others.

Kennebec.    Opinion December 12, 1894.

</div>

<div align="center">*Will.    Life Insurance.    Deficiency of assets.*</div>

Upon a bill in equity for construction of a will, it appeared that the testator gave various pecuniary legacies " to be paid out of my [his] personal estate." His personal estate proved insufficient to pay the legacies. He had two policies of insurance upon his life; one "payable to his legal representatives for his heirs and assigns;" the other "payable to his executors, administrators or assigns." No reference to these policies is contained in the will. Testator, at his death, left a daughter, but no wife. There had been no assignment of either policy, and both have been paid to the executors.

*Held;* That the phrase in the will " ' to be paid out of my personal estate" cannot be construed to include the proceeds of any of the insurance money; and that there is no latent ambiguity in the term " my personal estate" which requires or permits parol evidence to vary, enlarge or explain its meaning.

The policy payable to testator's " legal representatives for his heirs and assigns," does not fall within the provisions of R. S., c. 75, § 10, which authorizes a disposition by will, under certain limitations, of money received from insurance on life. The rights of the parties are the same as if the policy was in terms payable to his daughter, the sole heir. The proceeds of this policy are held by the executors in trust for her, and are by them to be paid to her in full, with all interest received thereon by the executors, and without any deduction, except such amount, if any, as the estate of the testator may have necessarily expended in collecting the insurance.

The other policy, payable to testator's " executors, administrators or assigns" is within the provisions of the statute. It is not disposed of by testator's

will. An amount equal to the premiums paid thereon within three years prior to the death of the testator, with interest thereon, and expense of collection, is to be retained by the executors and be treated as part of the testator's personal estate, to meet the calls in his will. The balance, with interest received by the executors, must be paid to the sole heir, the daughter.

Under a specific devise of land the devisee takes the absolute title, subject only to be divested if the other estate of the testator, real and personal, prove insufficient to pay debts, funeral charges and expenses of administration.

If such deficiency shall arise, that deficiency is to be supplied from the devised land unless otherwise obtained.

If it becomes necessary to sell the whole lot, and the proceeds of the sale are not wholly exhausted in payment of the debts and expenses, the surplus, being the proceeds of devisee's land, belongs to him, and cannot be used to fulfill the bequests in the will, but must be paid to the devisee.

ON REPORT.

The will of Joseph H. Chandler, of Belgrade, which was submitted to the court for construction in this case, after providing for the payment of debts and expenses, is as follows:

"Secondly, I direct my said executors to cause my lot in the Belgrade Cemetery and also the lot adjoining in which the body of my father, Joseph Chandler, is interred, to be placed in good order and condition, and I hereby direct that the sum of five hundred dollars be set aside from my personal estate for said purpose.

"Third. I give, bequeath and devise to my daughter, Rosie E. Chandler, her heirs and assigns forever, the sum of fourteen hundred dollars from my personal estate to be placed in the Augusta Savings Bank and to be paid to her, principal and interest, when she shall have arrived at the age of twenty-one years.

"Fourth. I give and bequeath to my sister, Elvira F. Golder, the lot of land on which my house and store in which I now live is situated, together with all of the privileges and appurtenances thereunto belonging, bounded on the north by land of H. W. Golder, east by the county road, south by land of Mary E. Rollins, and west by Long Pond, to her and her heirs and assigns forever.

"Fifth. I give and bequeath to my nephews and nieces, Herbert L. Kelley, Minnie Kelley, Calvin D. Kelley and Maude L. Golder, the sum of fifty dollars each out of my personal estate.

"Sixth. I give and bequeath the sum of five hundred dollars out of my personal estate to my sister, Ellen J. Organ.

"Seventh. I give and bequeath to my sister, Elvira F. Golder, the sum of five hundred dollars out of my personal estate.

"Eighth. I give, bequeath and devise to my sister, Elvira F. Golder, her heirs and assigns forever, all the remainder of all the property, both real and personal, of every name and nature of which I may die possessed." . . .

The case was submitted, upon bill, answers and proof.

The plaintiffs offered the deposition of Henry W. Golder, one of the executors, who drafted the will. Being asked to state, subject to the objection of defendants as irrelevant, all that the testator said to him when instructed to draw the will, he testified :

"He said first he wished to give to his sister, Elvira F. Golder, all of his real estate, — he had but very little personal property except his life insurance and directed that it should be divided. He instructed me then to divide his life insurance as it is given in the will, with one exception. He directed the sum of five hundred dollars to be set aside from his personal estate for fixing up a burying ground lot for himself and father, next he told me to give his daughter, Rosie E. Chandler, one thousand dollars to be deposited in the Augusta Savings Bank to be paid to her, principal and interest, when she should arrive at the age of twenty-one ; then he directed that Herbert L. Kelley, Minnie Kelley, Calvin D. Kelley, and Maude L. Golder should each receive the sum of fifty dollars out of his personal estate. He directed that his sister, Ellen J. Organ, should receive the sum of five hundred dollars and the remainder of his property should go to his sister, Elvira F. Golder, after all his debts were paid, expenses, etc. After I had made a memorandum for the will in that form, he read it over, said his life insurance came

to more than what he had bequeathed, that he had nothing but his life insurance to leave and he would change the bequest to his daughter, Rosie E. Chandler, to fourteen hundred dollars. He asked me what I meant by writing personal estate so many times in there,— why I did not say life insurance policies. I replied that after his death his life insurance became his personal property. He distinctly said several times, while giving these instructions, that this was his life insurance money that he was leaving to these parties.

"Ques. You say he instructed you to divide his life insurance as it is given in the will with one exception, what was that exception?"

"Ans. He afterwards increased his gift to his daughter from one thousand to fourteen hundred dollars. I omitted one bequest in my answer to the sixth question. He gave five hundred dollars to his sister, Elvira F. Golder."

All of the personal property, exclusive of the insurance policies, was valued in the inventory at about $525.00, and it was admitted in the answers that it was not sufficient to pay debts, expenses, &c.

*E. S. Fogg,* for plaintiffs.

The rule laid down in *Hathaway* v. *Sherman,* 61 Maine, 466, a leading case, does not conflict with the well-settled rule of law that the intention of the testator shall govern in the construction of the will. Had there been no life insurance in the case, there could have been no question of his intention. In applying the provisions of the will to the subject matter, the "personal estate," a latent ambiguity arises, whether he expected and intended to dispose of his life insurance as a part of his personal estate, which he had a perfect right to do. It is admitted and the case shows that, without the life insurance, all of the estate will be required for the payment of debts, expenses, etc. ; and that the legacies with the five hundred dollars to be expended upon the cemetery lots will almost wholly consume the full amount of the life insurance, leaving but a small part to go into the residue,— strong circumstantial evidence of the testator's

intention to include his life insurance in the disposition of his personal estate.

Parol evidence is admissible in order to understand the meaning and application of the testator's words. 1 Greenl. Ev. § 289; *Moreland* v. *Brady*, 34 Am. Rep. p. 581; *Stoops* v. *Smith*, 100 Mass. 63; 1 Greenl. Ev. §§ 286, 287, 288 and 291; *Brown* v. *Thorndike*, 15 Pick. p. 400; *Wason* v. *Colburn*, 99 Mass. 342.

*M. S. Holway*, for Rosie E. Chandler.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, WISWELL, STROUT, JJ.

STROUT, J. Bill in equity for construction of the will of Joseph H. Chandler. Testator had two policies of insurance upon his life, one for twenty-five hundred dollars, "payable to his legal representatives for his heirs and assigns," the other for one thousand dollars, "payable to his executors, administrators or assigns." Both policies have been paid in full to the executors. The testator made various legacies, all of which he provided should be paid "out of my [his] personal estate." He also devised a lot of land to his sister, Elvira F. Golder, in fee. The personal estate proves insufficient for the payment of debts, legacies and expenses of administration. We are asked whether the money received from said policies, or any part of it, can be applied to the payment of debts, legacies, expense of administration, or for the purpose named in the second item of the will, relating to his cemetery lot.

The policy for twenty-five hundred dollars was made payable to his legal representatives, "for his heirs and assigns." The terms of this policy show very clearly that the testator did not intend the proceeds therefrom to constitute a part of his estate in any event, but that his personal representatives were to take it in trust for other parties. The phrase, "for his heirs and assigns," is obscure. Whether in using that language it was intended that the assured should retain to himself the power of assignment, if he should think fit to exercise it, and, if not

exercised, the trust funds should go to his heirs, or whether the word assigns was intended to mean the assigns of the heirs, as if the policy read "his heirs and their assigns" is uncertain. The latter construction would seem to affect the apparent intention of the assured. But as no assignment of the policy has been attempted, it is not necessary to determine the precise legal effect of the word assigns as used in it. Freed from that complication, the policy, at the death of Chandler, made his heirs the beneficiaries. It was the duty of the executors to collect the amount of the policy, but when the money was received by them, they held it charged with a trust for the heirs of the testator. As in this case Rosie E. Chandler is the sole heir of the testator, she is entitled to the whole fund. It did not constitute any part of the personal estate of the testator. *Cables, appellant,* 67 Maine, 582 ; *Stowe* v. *Phinney,* 78 Maine, 244.

This policy does not fall within the provisions of R. S., c. 75, § 10, which authorizes a disposition by will, under certain limitations, of money received from insurance on life. The rights of the parties are the same as if the policy was in terms payable to Rosie E. Chandler. No deduction of premiums for three years, as provided in § 10, is to be made from the proceeds of this policy ; but the whole amount received, with the interest thereon, which the executors have received, is to be paid to the heir, Rosie E. Chandler, as her absolute property, less the expenses, if any, to the estate, in collecting the money.

The other policy for one thousand dollars was payable to the testator's executors, administrators or assigns. The proceeds of this policy are within the provisions of the statute. The premiums paid thereon within three years prior to his death, with interest thereon, are to be retained by the executors, and be treated as part of his personal estate, to meet the calls of the will. The balance will go to the heir, Rosie E. Chandler, there being no widow, according to the statute, unless it is disposed of by the will of the testator.

The provisions of the will are clear and explicit. In all the legacies, the testator specifies that they shall be paid out of his

personal estate. Can the fund derived from this one thousand dollar policy be regarded as the personal estate of the testator? We think not. By its nature it could never become actual, veritable property in his hands; by its terms it was payable after his death, never to him. While he had a qualified interest in it, he never could reduce it into possession, never use or invest the money. The statute allows it to be treated as part of his estate, if there was no widow or issue. If the estate is solvent, the statute allows it to be disposed of by will. If insolvent, and there is either a widow or children, or both, the disposition by will must be among them. *Hathaway* v. *Sherman*, 61 Maine, 466; *Hamilton* v. *McQuillan*, 82 Maine, 205. If the testator intended to dispose of the proceeds of this one thousand dollar policy, by his will, he should have used apt words to effect that intention. This court has said, in *Hathaway* v. *Sherman*, *supra*, in order to effect this object, "the testator must use language directly significant of his intention in this respect; that, classed by the legislature as this fund is, it is not to be appropriated to the payment of debts or of any pecuniary legacies couched in general terms merely, even to the widows or children, unless it is expressly referred to as the fund from which such payment is to be made, and that it does not pass by any general residuary clause; in short, that the testator's intention to change the direction which the law gives to this very peculiar species of property, is not to be inferred from general provisions in his will the fulfillment of which might require the use of such money, but must be explicitly declared." This will makes no mention of the life insurance; and no expression in it affords any evidence that the testator intended to change the direction which the law gives to such insurance money, except the fact that it *now* appears that the personal estate is insufficient to pay the debts and bequests in the will. It does not appear whether such was the case when the will was made or not. BARROWS, J., in *Hathaway* v. *Sherman*, *supra*, says such "fact is entitled to but little weight. The records of every probate court show too many instances of wills containing liberal bequests which the testators left no

means, or very inadequate means, to fulfill, to justify us in concluding from this circumstance that the testator designed to change the disposition which the law would otherwise make of this fund, which he nowhere mentions as a source from which money to pay the legacies he gives is to be derived." *Blouin* v. *Phaneuf*, 81 Maine, 176.

But it is claimed that parol evidence is admissible to show the testator's intention, upon the ground of a latent ambiguity in the will. While it is well-settled law, that latent ambiguities may be explained by evidence *aliunde* the will, it is equally well settled, that where the terms of the will are clear, definite and explicit, the intention of the testator must be ascertained from the will itself, and cannot be aided or explained by parol testimony. The phrase "my personal estate," frequently repeated in this will, is not ambiguous, uncertain, but its common and legal meaning are entirely clear. A man's "personal estate" includes all his property other than real estate, over which he has absolute dominion and control, which he may dispose of by gift or sale, at his option, which he may change from one species of property to another, and may use and expend for his personal needs, or pleasures, or which may be subjected to the payment of his debts. Most of these attributes do not attach to a policy on life. It cannot be reached by creditors during the life of the insured. But for any surplus of premiums paid for two years, in excess of one hundred and fifty dollars per year, they may have a lien upon the policy. R. S., c. 49, § 94.

If the insured dies intestate, the money received from insurance on his life, deducting three years' premiums, does not constitute a part of his estate for the payment of debts, if he leaves a widow, or issue. R. S., c. 75, § 10. The statute authorizes a disposition of the fund by will, under certain limitations, but this authority is more in the nature of a power of appointment than a direct legacy of property, and does not extend beyond the statute authority. We perceive no latent ambiguity in the will that requires or permits oral testimony in aid of its construction. It follows that the offered testimony of

testator's conversation with the scrivener who drew the will, and at the time it was drawn, is not admissible, and cannot be received to vary, explain or control, the plain language of the will.

The result is, that the proceeds of the one thousand dollar policy, and interest thereon received by the executors, less three years' premiums and interest thereon and expenses of collection, if any, are to be paid to Rosie E. Chandler, the sole heir, as her absolute property, and cannot be treated as part of the estate for any purpose.

The fourth item in the will makes a devise of a lot of land to Elvira F. Golder. We are asked whether this devise passed title in fee to the devisee, subject only to payment of debts, funeral charges, and costs of administration, if necessary, and whether it is liable for the payment of the sum mentioned in the second item of the will; and whether, in case it shall become necessary to sell the lot for payment of debts, and a surplus of proceeds should remain after accomplishing that object, to whom such surplus belongs.

The devise by the will, is a specific devise of a fee simple estate, and the devisee takes the absolute title, subject to be devested only, if the other estate of the testator, real and personal, prove insufficient to pay debts, funeral charges and expense of administration. If such deficiency shall arise, that deficiency must be raised from the devised lot, unless otherwise obtained. If it becomes necessary to sell the whole lot, and the proceeds of the sale are not wholly exhausted in payment of the debts and expenses, the surplus, being the proceeds of the devisee's land, belongs to her, and cannot be used to fulfill the bequests in the will, but must be paid by the executors to her.

*Decree in accordance with this opinion.*