WILLIAM H. MILLER et al., Appellants, v. MARTHA A. MILLER et al., Appellees.

**WILLS: Testamentary Subjects—Proceeds of Life Insurance.** The pro-
1   ceeds of life insurance payable to the *estate* of the insured or to his *executors or administrators* may be disposed of by will. Sec. 8776, Code of 1924, which in substance provides that insurance so payable ''shall inure to the separate use'' of the surviving spouse and children, supplements said right, because said section simply directs in legal effect who shall take the avails of life insurance so payable *when there is no will.*

**INSURANCE: Life Insurance—Change of Beneficiaries.** A policy
2   method of changing beneficiaries under life insurance policies is admittedly exclusive; but a testamentary bequest of the proceeds of such policies payable to the *estate* of the insured or to his *executors or administrators* does not constitute a ''change of beneficiaries,'' but constitutes a disposal of that much of the *estate* left by the insured. (See Book of Anno., Vol. 1, Sec. 8694, Anno. 7 *et seq.*; Sec. 8787, Anno. 2 *et seq.*)

Headnote 1: 40 Cyc. p. 1049.    Headnote 2: 37 C. J. pp. 584, 587.

*Appeal from Black Hawk District Court.*—H. B. BOIES, Judge.

### NOVEMBER 24, 1925.

ON May 31, 1923, the defendants, Martha A., J. J., and Clyde S. Miller, who had in their possession or control a considerable sum, the proceeds of several insurance policies on the life of Lewis Miller, deceased, were garnisheed on execution issued out of the district court of Black Hawk County on a judgment entered February 15, 1923, against Martha A. Miller, for $17,650. Answers were filed by the garnishees, and same were controverted by plaintiff. On September 25, 1923, the other parties named, who are the children of Lewis Miller, deceased, filed a petition in intervention, setting up the terms and provisions of the will of their father disposing of the funds in controversy in trust to Martha A. Miller, as trustee, and J. J. and Clyde S. Miller, as advisory trustees, and asking that the terms and provisions of the will be carried out. Issues were joined upon the petition in intervention, amendments thereto, and

other pleadings filed, and by agreement of the parties these were consolidated and tried to the court upon a stipulation of facts. The court rendered judgment in favor of the garnishees and interveners, and dismissed the garnishment proceedings. From the judgment thus entered, plaintiffs appeal.—*Affirmed.*

*Clark & Clark* and *Pickett, Swisher & Farwell,* for appellants.

*P. H. Paulsen* and *Stipp, Perry, Bannister & Starzinger,* for appellees.

STEVENS, J.—At the time of his death, on November 21, 1921, Lewis Miller held six policies of insurance upon his life, as follows: two in the Union Central Life Insurance Company for $10,000 each,—one payable to "my estate, if living at my death, otherwise to my administrators, executors or assigns," and the other to "the administrators, executors or assigns of the insured;" two policies in the New England Mutual Life Insurance Company for $10,000, each payable to "the executors, administrators or assigns with right of revocation;" two policies in the John Hancock Mutual Life Insurance Company for $5,000 each, payable to the "executors or administrators if living, or to such other beneficiary as may be finally substituted under the conditions hereof."

1. WILLS: testamentary subjects: proceeds of life insurance.

By his will he disposed of the proceeds of his life and accident insurance as follows:

"All of the rest, residue and remainder of my property, of whatever kind and description, both real and personal, which I may own at the time of my death, including my life and accident insurance policies payable to myself or to my estate, and all of the proceeds therefrom including my homestead, subject to Item I hereof, I give, devise and bequeath in equal shares to my eight children, Mary Grace Labarre, Clyde S. Miller, Glenn W. Miller, Max W. Miller, Paul S. Miller, Martha June Miller, Julia Abigail Miller, and Lewis Junior Miller, to be held in trust as hereinafter mentioned and to be administered as a trust as hereinafter mentioned and to be administered as a trust as hereinafter specified."

The testator was survived by his wife and all of the children named as legatees in the will, several of whom were and still are minors. The will was duly admitted to probate in Black Hawk County, and Martha A. Miller qualified as executrix, and also as trustee, as provided by the will. The two sons named as advisory trustees also qualified as such, and assumed the duties thereof. Martha A. Miller elected to take under the terms of the will. Insurance in the sum of $47,362.72 was paid to the executrix, and, at the time of the garnishment, she was administering the same as trustee, the estate having been closed. All of the policies provided that the beneficiary named therein might be changed at any time by written notice to the company at its home office, upon forms furnished thereby. The policies of the New England Mutual Life and the John Hancock Mutual Life further provided that the change of beneficiary should become effective only upon indorsement thereof on the policy. Each of the policies specifically reserved the right of revocation to the insured. Appellees do not controvert the claim of appellant that, unless the disposition made of the proceeds of the insurance policies by the will is carried out, a substantial amount, which would otherwise go to the surviving widow, under Section 1805 of the Code of 1897, is subject to garnishment, and should be so disposed of by the court. On the other hand, appellants do not claim that, if effect be given to the terms of the will, the ruling complained of is erroneous.

I. The theories of counsel for the respective parties are widely divergent: counsel for appellants contending that the attempt of the insured to dispose of the proceeds of the policies in the manner stated was, in effect, nothing more than an attempt to change by will the beneficiaries named in the policies. The law is well settled in this state that, where a method of changing beneficiary is contained in the policy, such method is exclusive, and must be followed; and that a change cannot in such case be made by will. *Wendt v. Iowa Legion of Honor,* 72 Iowa 682; *In re Estate of Ensign,* 181 Iowa 1081; *Brotherhood of Am. Yeomen v. Shine,* 196 Iowa 554; *Brinsmaid v. Iowa St. Trav. Men's Assn.,* 152 Iowa 134; *Townsend v. Fidelity & Cas. Co.,* 163 Iowa 713; *Hull v. Brotherhood of Am. Yeomen,* 199 Iowa

2. INSURANCE: life insurance: change of beneficiaries.

356; *Ehlerman v. Bankers Life Co.*, 199 Iowa 417, and cases cited.

But, if the policy does not prescribe a method for changing the beneficiary, a change thereof may, under some circumstances at least, be made by will. *Brinsmaid v. Iowa St. Trav. Men's-Assn.*, supra; *Townsend v. Fidelity & Cas. Co.*, supra.

As has already been observed, all of the policies in question were made payable to the estate, or to the executors or administrators of the insured. The argument of counsel for appellees proceeds on the theory that the avails of the policies were a part of the estate of the insured, and, like any other personal property, subject to be disposed of by will, under the provisions of Section 3270 of the Code of 1897. The term "estate" has been, in some instances, held not to include life insurance (*Golder v. Chandler*, 87 Me. 63 [32 Atl. 784]); but this definition, it seems to us, is too narrow to give effect to the usual and ordinary meaning of the word. *Wolf v. Wolf*, 152 Iowa 121.

It is true that the proceeds of an ordinary life policy payable to the estate of the deceased can never come into his possession, and are payable to his executors or administrators only after his death. Nevertheless, it is a valid and subsisting contract, and ripens immediately upon his death into a chose in action; and, unless the distribution thereof is controlled by statute, the proceeds of a policy payable to the estate or executors or administrators of the insured would pass, under the general statute of descent, to his heirs. The executors or administrators of the estate of the insured are not beneficiaries, but in their representative capacity the proceeds are payable to them for the purpose of distribution to the beneficiaries. It seems to us, therefore, quite clear that the will in question did not attempt merely to effect a change of beneficiaries, but that it operated upon the estate of the insured, and must be given full effect as a testamentary disposition thereof, unless the proceeds of life insurance policies can in no case be disposed of by will, or unless the disposition attempted in this case is prohibited by Section 1805 of the Code of 1897. We shall dispose of these questions in order.

II. The question as to whether the insured may dispose of the avails of insurance on his life by will has never been passed

upon by this court. We have held, however, in effect, that, where the policy is payable to his personal representatives, the proceeds are a part of his estate. *McClure v. Johnson*, 56 Iowa 620; *Kelley v. Mann*, 56 Iowa 625; *Rauen v. Prudential Ins. Co.*, 129 Iowa 725.

Language is to be found in *McClure v. Johnson* and *Rauen v. Prudential Ins. Co.*, supra, which apparently assumes, but does not decide, that life insurance, when not payable to another than the insured or his personal representatives, may be disposed of by will. The disposition of life insurance is controlled in many jurisdictions by statute, and but few cases in point have been called to our attention. The right to do so is recognized by text-writers. 1 Underhill on the Law of Wills, Section 56; 2 Joyce on the Law of Insurance (2d Ed.), Section 736.

To what extent, if at all, the holding in the following cases, which sustain the right of testamentary disposition, was controlled by statute, is not disclosed by the opinions. *Blouin v. Phaneuf*, 81 Me. 176 (16 Atl. 540); *Catholic Knights v. Kuhn*, 91 Tenn. 214 (18 S. W. 385); *Watson v. Watson*, 183 Ky. 516 (209 S. W. 524); *German-American St. Bank v. Godman*, 83 Wash. 231 (145 Pac. 221); *Fox v. Senter*, 83 Me. 295 (22 Atl. 173); *Pruner's Estate*, 222 Pa. St. 179 (70 Atl. 1000); *Haynes v. Walker*, 111 Tenn. 106 (76 S. W. 902); *Hamilton v. McQuillan*, 82 Me. 204 (19 Atl. 167). Under some of the above cases, the holding of the court is qualified, while others may not be exactly in point.

The decisions in the following cases sustaining the right of testamentary disposition of life insurance are based upon provisions of the policy or legislative enactments, but the discussion may be helpful. *Stoelker v. Thornton*, 88 Ala. 241 (6 So. 680); *Aveling v. Northwestern Masonic Aid Assn.*, 72 Mich. 7 (40 N. W. 28); *Golder v. Chandler*, 87 Me. 63 (32 Atl. 784); *Leonard v. Harney*, 173 N. Y. 352 (66 N. E. 2); *Walker v. Peters*, 139 Mo. App. 681 (124 S. W. 35); *Maclean v. Fisher*, 60 Fla. 331 (53 So. 614).

We perceive no fundamental reason why the proceeds of a life insurance policy payable to the estate or the personal representatives of the insured may not, under Section 3270, be disposed of by will. To hold that, because the insurance is not

payable during the lifetime of the insured, it does not, for that reason, become a part of his estate, is to give a restricted and technical meaning to the word "estate." Perhaps, in a sense, the term is technical; but that it refers to and includes all forms of personal property, as well as real estate, is well settled. *Wolf v. Wolf,* supra. It is so commonly understood. It is a chose in action, based upon a contract entered into between the insured and the insurer, collectible in an action in the name of the executor or administrator. Furthermore, if the policy has a cash surrender value, as most policies now issued do, it would certainly be an asset in a very vital sense. In any event, the policy has actual value, and, at the death of the insured, its ultimate value becomes fixed as a part of his estate. We are, therefore, of the opinion that, unless controlled or prohibited by Section 1805, the avails of a life insurance policy payable as in the present case may be disposed of as other personal property by will.

III. Section 1805 of the Code of 1897, so far as material to this case, is as follows:

"A policy of insurance on the life of an individual, in the absence of an agreement or assignment to the contrary, shall inure to the separate use of the husband or wife and children of said individual, independently of his creditors. * * * The avails of all policies of life or accident insurance payable to the surviving widow shall be exempt from liability for all debts of such beneficiary contracted prior to the death of the assured, but the amount thus exempted shall not exceed five thousand dollars."

The provisions of this section contemplate a case where the policy is payable to the deceased or his or her legal representatives. *McClure v. Johnson,* supra. This statute is obviously something more than a mere exemption statute. It was so interpreted in *Rhode v. Bank,* 52 Iowa 375, where we said:

"The provision was manifestly designed to restrict the distribution of the avails of life insurance to the classes named. We do not infer this merely from the fact that the legislature must be presumed to have had some object. The language used indicates very clearly that the legislature had in view restriction in distribution. The provision is that the policy shall inure

to the separate use of, etc. Now these words are not used to cut off creditors. They were cut off before. Separate use, therefore, does not mean a use separate from the creditors. The restriction, then, must have reference to those who might otherwise take as distributees.''

Thus, it is a restriction upon the distribution to be made of the avails of life insurance. It fixes the classes to which it must be paid clearly, if the insured died intestate. The limitation is in favor of the husband or wife and the children thereof. If the wife or husband alone survive the insured, in the absence of statute providing to the contrary, the proceeds of any insurance policy payable to the personal representatives would pass, one half to the husband or wife, and the remainder to his or her legal heirs, under the general statute of descent. This statute prevents this, and, in the sense that it provides for the distribution of the funds to the classes named, it is in the nature of a statute of descent. If this statute was intended only to provide exemption for the benefit of the husband or wife to the extent of $5,000, and to limit the distribution of the proceeds of the policy to the classes named only if the insured died intestate, then it is not applicable to the present case. If, on the other hand, it imposes an absolute limitation upon the power of the insured to dispose of the proceeds of insurance upon his life in no other way than by agreement or assignment, or to a specifically designated beneficiary, then, obviously, the will in question must be disregarded, and distribution made under the statute. Necessarily, the exemption provision of the statute in no way affects the authority of the insured to dispose of the proceeds of insurance. The avails thereof become such after payment of the amount stipulated in the policy to the personal representatives of the insured. Until that time, the right thereto is a chose in action. The preservation of life insurance for the use and benefit of the wife and children of the insured is akin to the exemption of the homestead. The language of the court in *Rhode v. Bank,* supra, in so far as it refers to cutting off creditors, does cut off creditors; but it had the additional purpose of designating certain classes to the exclusion of others. The insured during his lifetime may designate anyone permitted by the terms of the policy as beneficiary. The effect of the will

was not to divert the insurance from the classes named in Section 1805, but to preserve the same as a trust fund for the use and benefit thereof. If the will be permitted to stand, the entire proceeds of the several policies will inure to the benefit of the children; but if it be declared invalid, then something like $12,000 thereof becomes at once subject to execution and garnishment on appellants' judgment.

Our attention is called in this connection to *Marifjeren v. Farup*, 199 N. W. 181. This is a decision of the Supreme Court of North Dakota. The statute of that state is similar to, but not identical with, Section 1805. The court held that the policy, which was made payable to the personal representatives of the insured, was, under the statute in effect, payable to his heirs, and that they took the insurance under the contract, and not by descent. Possibly the difference in the working of the two statutes sufficiently distinguishes that case from the conclusion announced herein. It seems to us that the fair and reasonable interpretation of Section 1805 imposes no prohibition upon the right of the insured to dispose of the proceeds of insurance on his life by the terms of the policy payable to his estate. The legislature, in enacting this statute, was not dealing with the subject of wills, but evidently sought first to fix the classes to which the avails of life insurance, when not otherwise disposed of, should be paid, and, second, to create an exemption in favor of the classes named. If disposed of by one of these methods, the funds would not belong to the insured's estate, and no question such as we have here could arise. The right in this state to dispose of personal property by will is conferred by Section 3270. This right is absolute. Section 1805 cannot, in our opinion, be interpreted as a limitation upon the power conferred by Section 3270. To so hold would be rather to pervert than interpret its language.

Nor are we, as already stated, convinced that the will sought only to effect a change of beneficiaries. It did not do that. The insurance passed to the executrix, and, through her as such, to the trustees, to be administered by them as provided by the will. It must, of course, be conceded that the term "legal representatives" is sometimes interpreted as meaning heirs at law; but that is generally true only where such intention is clearly ex-

pressed by the testator, or is to be gathered from the instrument as a whole. *Schultz v. Citizens' Mut. Life Ins. Co.,* 59 Minn. 308 (61 N. W. 331). None of the decisions of this court cited by appellants hold to the contrary. It is our conclusion, therefore, that the finding and judgment of the court below is right, and it is, therefore,—*Affirmed.*

All the justices concur.