Allyn, J.
This cause came on to be heard on the petition of the plaintiff, Adele Chittenden Weller, as the surviving spouse of Barzillai Worth Weller, deceased, asking for the construction of the provisions in the will of Barzillai Worth Weller, deceased, in favor of said spouse, and for the judgment of the court, and upon certain questions presented in said petition, and upon the answer of the defendant Oscar Leslie Teagarden and the reply of the plaintiff thereto, all of the other defendants being in default for pleading.
The following facts are not in dispute.
The said Barzillai Worth Weller died on May 3, 1932, leaving his widow the said Adele Chittenden Weller and no children. , Surviving him was his mother, Eunice V. Weller. At the time of his death, he was president of The J. Weller Company of Oak Harbor, Ohio. He left a last will and testament which is now before the court for construction and interpretation, a copy of which is as follows:
“I, Barzillai Worth Weller of the village of Oak Harbor, Ohio, do make and publish this my last will and testament.
“Item First: It is my last will that all my just debts and funeral expenses be paid out of my estate and soon after my decease as may be found convenient.
“Item Second: I give, devise and bequeath to my wife, Adele Chittenden Weller, if she survives me, all of my property both real, personal and mixed, of every kind and nature and wheresoever situated, except the capital stock owned by me in The J. Weller Company, to be hers absolutely and forever.
*331 “Item Third: If my said wife, Adele Chittenden Weller, shall not survive me then I give and bequeath to Charles W. Sowles and Clara C. Sowles, 58 Lockwood Court, Walnut Hills, Cincinnati, Ohio, three fourths (%) of all my life insurance policies and the earnings thereon, if any, subject to the item hereinafter set forth providing for the payment of my debts.
“Item Fourth: If my said wife, Adele Chittenden Weller, shall not survive me then I give, and bequeath to Eloise Sowles Kraemer, 510 Meadow Road, Chicago, Illinois, one fourth (34) of all my life insurance policies and the earnings thereon, if any, subject to the item hereinafter set forth providing for the payment of my debts.
“Item Fifth: If my said wife shall not survive me then I give, devise and bequeath all of my property of every kind and nature wheresoever situated, except my life insurance hereinabove bequeathed and except the capital stock ownd by me in The J. Weller Company, to Oscar Leslie Teagarden of Oak Harbor, Ohio.
“Item Sixth: I give and bequeath all of the capital stock in the J. Weller Company owned by me at the time of my decease to Oscar Leslie Teagarden, trustee, upon the following terms and conditions, to-wit:
“My said trustee shall have the full power and authority to control said capital stock, to vote the same, draw the dividends thereon and do all other matters and things in and concerning said stock commonly -done by the owner thereof, except that the said Oscar Leslie Teagarden shall not have the right to sell or dispose of said stock during the life of my said wife, Adele Chittenden Weller, without the consent of the said Adele Chittenden Weller.
“If the said Adele Chittenden Weller shall consent in writing to the sale of said stock then my said trustee shall have the right to sell said stock at such price as shall be agreed upon between the said Adele Chittenden Weller and my said trustee.
“If said stock be sold then the proceeds thereof shall remain in said trust fund and be invested in government or municipal bonds or in such other securities as shall be approved by a reputable banker in Ottawa county, Ohio, and consented to by said Adele Chittenden Weller.
“It being my desire that said capital stock be kept in said trust and not sold if a fair return can be made upon the same.
“Of the net income from said capital stock in said trustee shall pay to my said wife, Adele Chittenden Weller, during *332 her lifetime the sum of Five Thousand Dollars per year or such part of said Five Thousand Dollars ($5,000.00) as said stock shall earn. All of net income in excess of said Five Thousand Dollars ($5,000.00) shall be paid to the said Oscar Leslie Teagarden,
“The net income shall be divided each year and said trustee shall furnish to the said Adele Chittenden Weller an itemized statement showing the net earnings of such capital stock for the year at the time settlement is made with the said Adele Chittenden Weller for her share of said net earnings,
“Said trustee shall serve without any compensation whatsoever and shall serve without giving bond, unless a demand be filed by the said Adele Chittenden Weller that said trustee give bond, in which case said trustee shall give bond in twice the amount of the value of said capital stock in said trust fund and the premium for said bond shall be paid out of the earnings of said capital stock.
“Said trust shall cease and determine at the death of my said wife, Adele Chittenden Weller and said trustee shall, after paying all of the obligations of said trust, transfer all the principal of said trust fund to the said Oscar Leslie Teagarden and shall pay the net earnings of said capital stock remaining in his hands undistributed and not exceeding the sum of Five Thousand Dollars ($5000.00) to the estate of the said Adele Chittenden Weller, regardless of whether the death of the said Adele Chittenden Weller occurred in the middle of a fiscal year or not.
“All the rest, residue and remainder of said trust fund shall pass to the said Oscar Leslie Teagarden as his absolute property.
“Item Seventh: I further request that a suitable marker be purchased by my executrix hereafter named to conform to the other markers now on the Weller family lot and that the expense of so doing be paid as a debt of my estate.
“Item Eighth: I further provide that all of the debts owed by me, if any, at the time of my death shall be paid out of my life insurance.
“I request that no appraisement be made of any of my household goods.
“I hereby nominate and appoint my beloved wife, Adele Chittenden Weller, to be executrix of this my last will and testament and hereby request that the Probate Court in which this will is probated to permit my said executrix to qualify and act without giving bond.
“I hereby revoke all other wills by me heretofore made.
*333 “In Testimony Whereof, I have hereunto set my hand and subscribed my name at Port Clinton, Ohio, this 14th day of December, 1929.
“Barzillai Worth Weller”
“The foregoing instrument was signed at the end thereof by the said Barzillai Worth Weller in our presence and we heard him acknowledge the same as his last will and testament and at his request and in his presence we hereunto respectively subscribe our names as attesting witnesses at Port Clinton, this 14th day of December, A. D, 1929.
Ruel Crawford, resides at Port Clinton, Ohio.
Edna Hess, resides at Port Clinton, Ohio.”
The said will was duly admitted to probate by the Probate Court of Ottawa county, Ohio, and on or about the 14th day of June, 1932, letters testamentary were duly issued thereon by said court to the said Adele Chittenden Weller who duly qualified and entered upon her duties as such executrix.
The inventory and appraisement filed in the Probate Court shows . gross assets belonging to the estate of $40,810.13. Of this $29,200.00 is represented by 584 shares of the common stock of The J. Weller Company, which is substantially the controlling interest in that company. The schedule of debts filed in the Probate Court aggregates $23,399.55, among which debts are listed the widow’s allowance of $5000.00, balance due the widow in lieu of homestead $1810.00, and a mortgage of $4000.00 on the home in Oak Harbor. There is also listed among these debts estimated court costs, attorney fees, taxes, etc. of $2500.00, which item, however, has not been approved by the Probate Court at the present time, for the reason that the amount is not yet determinable.
At the time of his death the said Barzillai Worh Weller held several life insurance policies with various life insurance companies as follows:
Policy No. 54705 — The Ohio National Life Insurance Company, $10,000.00, with the said Adele C. Weller as beneficiary. It was provided in said policy that the principal amount should be paid in equal monthly installments during her lifetime to said beneficiary, according to the *334 schedule therein set forth. Said policy has the following provisions with reference to the change of beneficiary, to-wit:
“Change of Beneficiary — This policy is issued with the express understanding that the insured may change the beneficiary at any time during the continuance hereof by filing with the company written request, duly acknowledged, accompanied by this policy; such change to take place upon endorsement of the same hereon by the company; such change, however, to be subject to the rights of any assignee. Without the consent of the beneficiary the insured may exercise every right conferred on him by this policy.”
Policy No. 358359 — The Home Life Insurance Company, $10,000.00 with Adele Chittenden Weller, which is the said Adele .Chittenden Weller, as beneficiary. Said policy has the following provisions with reference to the change of beneficiary, to wit:
“The right of change of beneficiary in accordance with the provisions of the policy is reserved by the insured.
“Change of Beneficiary. If any beneficiary shall die before the insured, the interest of such beneficiary shall vest in the insured, unless otherwise herein provided. If all interest in the policy has become vested in the insured or if the right is reserved to the insured to change the beneficiary, the insured, if there be no existing assignment of the policy filed with the company as herein provided, may, if the policy is in force, designate a new beneficiary, with or without reserving the right to change the beneficiary, by filing written notice thereof at the Home Office of the company accompanied by the policy for suitable endorsement. If the right is not reserved to the insured to change the beneficiary, the insured and such beneficiary jointly may designate a new beneficiary in the manner aforesaid. Any change of beneficiary shall take effect upon the endorsement of the same on the policy by the company and not before.
“Owner. If the right is reserved to the insured to change the beneficiary, the insured while living may without the consent of any beneficiary exercise all the rights of the owner of the policy.”
Policy No. 3820344 — The Prudential Insurance Company *335 of America, $4000.00 with Adele C. Weller, which is the said Adele Chittenden Weller, as beneficiary. Said policy has the following provisions with reference to the change of beneficiary, to-wit:
“The right to change the beneficiary has been reserved by the insured.
“Change of Beneficiary. — If the right to change the beneficiary has been reserved and if the insured shall have attained to majority according to the laws of the state in which the insured resides, the insured may at any time while this policy is in force, by written notice to the company at its home office, change the beneficiary or beneficiaries under this policy, such change to be subject to the rights of any previous assignee and to become effective only when a provision to that effect is endorsed on or attached to the policy by the company, whereupon all rights of the former beneficiary or beneficiaries shall cease.”
Policy No. 921922 — Bankers Life Company, $25,000.00, with Adele C. Weller, which is the said Adele Chittenden Weller, as beneficiary. Said policy is designated in capitals on the policy as follows “Business Protection Policy.” Said policy provides “the right of the owner to change the beneficiary.” With reference to the change of beneficiary, said policy further provides as follows, to-wit:
“When the right of revocation has been reserved or in case of the death of any beneficiary under an irrevocable designation, the owner, subject to any existing assignment of this policy may, from time to time, while the policy is in force, designate a new beneficiary, with or without reserving right of revocation, by filing written notice thereof at the home office of the company accompanied by the policy for suitable indorsement. Such change shall take effect when indorsed on the policy by the company and not before. If any beneficiary shall die before the insured, the interest of such beneficiary shall pass equally to the beneficiary or beneficiaries surviving, unless otherwise provided in the policy, or in directions for payyments under settlement options. If no beneficiary or contingent beneficiary shall survive the insured, then payment shall be made to the owner.”
Said policy contains the following provisions, to-wit:
*336 “This policy shall be under the full control of Barzillai W. Weller hereinafter designated as the owner of the policy.”
Policy No. 358697 — The Home Life Insurance Company of New York, $25,000.00, payable to The J. Weller Company, a corporation of Ohio, its successors or assigns, as beneficiary, with the following provisions with regard thereto, to-wit:
“The beneficiary shall be deemed to be the owner of this policy and may exercise all the rights and privileges of ownership without the consent of the insured.”
The premiums on the last named insurance policy in which The J. Weller Company is beneficiary, were paid by The J. Weller Company. The premiums on all the other policies were, paid by the decedent and the policies were taken out by him.
At the time said decedent made said will and at the time of his death, said Oscar Leslie Teagarden was secretary of The J. Weller Company and next in charge under said decedent.
There have been no dividends of any consequence in the last ten or fifteen years of said company’s operation.
Plaintiff states in her petition several questions which will be considered, discussed and answered in the order stated:
“First, are the debts of the estate to be paid out of the estate as indicated in Item First of the will or out of the life insurance as indicated in Item Eighth of the will, the life insurance policies being made payable to the widow directly and The J. Weller Company and said insurance forming no part of the estate?”
Whether the debts of the estate are to be paid out of the estate as indicated in Item First of the will or out of the life insurance as indicated in Item Eighth of the will, depends- on the widow’s election. For the reasons hereinafter given, the court is of the opinion that the life insurance referred to in Item Eighth of the will means the life insur *337 anee payable directly to the widow and not that payable to The J. Weller Company.
The rule is clearly stated and established by the Supreme Court in the case of White v. Brocaw, 14 O. S. 339, that, “No one is permitted to claim under, and, at the same time, adverse to a will. If the testator assumes to dispose of property belonging to the devisee or legatee, the latter accepting the benefit, must also make good the testator’s attempted disposition.” This rule is recognized, amplified and explained in the case of Bebout v. Quick, 81 O. S. 196, at page 199. The court, therefore, is of the opinion and finds that, if the widow elects to take under the will, all of the debts owed by the testator at the time of his death shall be paid out of his life insurance directly payable to her.
We will next consider what the situation of the widow will be with reference to the insurance directly payable to her if she elects to take under the law rather than under the will.
Each of the insurance policies, in which the widow is the beneficiary expressly provides therein for a change of beneficiary and the mode by which such change is to be effected. Each of such policies provide, in substance, that such change may be effected by filing a written notice or request therefor with the company, accompanied by the policy, and the indorsement of the change on the policy by the company.
Upon the mode of making a change in the beneficiary, it is said, in 37 Corpus Juris 584, Section 350: “Policies authorizing a change of beneficiary usually specify the mode of effecting the change, as by filing a written notice or request, accompanied by the policy, at the home office of the. company, and the indorsement of the change on the policy by the company. In order to effect a change of beneficiary the mode prescribed by the policy must be followed. * * * ”
In Cooley’s Briefs on Insurance (Second Edition), at page 6438, it is said: “The insurer may make reasonable regulations defining the method by which a member may change the beneficiary named in his benefit certificate, and *338 When such regulations are made they become part of the contract, and the right to change can be exercised in no other %oay.”
The Supreme Court of Iowa in the case of Miller v. Miller, 205 N. W. 870, 43 A. L. R. 567, involving ordinary life policies, say: “The law is well settled in this state that, where a method of changing beneficiary is contained in the policy, such method is exclusive and must be followed, and that a change cannot in' such case be made by will. But, if the policy does not prescribe a method for changing the beneficiary, a change thereof may, under some circumstances at least, be made by will.” And this seems to be the general rule. Cooley’s Briefs on Insurance (Second Edition) page 6447.
This court, therefore, is of the opinion and finds that no change was made in the beneficiary, in the insurance policies in which the widow is the beneficiary, by said will. The court cannot find any distinction, in this respect, between the policy of the Bankers Life Company and the other policies in which the widow is the beneficiary.
The conclusion of the court, therefore, is that the debts of the estate cannot be paid from the life insurance made payable to the widow, if she elects to take under the law rather than under the will. If she so elects, such insurance is her absolute property, free and clear from all claims of the creditors, and exempt from all liabilities from any debt, or debts, of said testator, and in such event, the debts of said estate, must be paid out of the estate as indicated in Item First of the will and not out of the life insurance as indicated in Item Eighth of the will. No change in the beneficiary having been made in the policies payable to the widow, her right thereto became vested in her upon the death of the testator. Oeting v. Sparks, 109 O. S. 94. But, as already indicated, her right thereto is subject to the payment of the debts of said estate if she elects to take under the will.
“Second, what power and authority under the will is lodged in Oscar Leslie Teagarden to vote the stock in The J. Weller Company, particularly with respect to his own salary in said company if it becomes necessary to have *339 said stock (which constitutes a majority of the stock in said company) voted in order to carry the sanction of the stockholders of the company to such a matter; the Supreme Court of Ohio having held in the case of Briggs v. Gilbert Grocery Company, 116 O. S. 343 that directors may not fix their own salaries and it being likely that a stockholders’ meeting would be required in view of such ruling?”
This question is clearly and definitely answered by the second and third paragraphs of Item Sixth of the will, as follows:
“My trustee shall have the full power and authority to control said capital stock, to vote the same, draw dividends thereon and do all other matters and things in and concerning said stock commonly done by the owner thereof, except that the said Oscar Leslie Teagarden shall not have the right to sell or dispose of said stock during the life of my said wife, Adele Chittenden Weller, without the consent of the said Adele Chittenden Weller.
“If the said Adele Chittenden Weller shall consent in writing to the sale of said stock then my said trustee shall have the right to sell said stock at such price as shall be agreed upon between the said Adele Chittenden Weller and my said trustee.”
The answer to this question, therefore, is thát said trustee would have the same power and authority to vote said stock as the owner thereof.
“Third, in the event the widow elects to take under the law rather than under the terms of this will, shall the-bequest of stock in The J. Weller Company allotted to Oscar Leslie Teagarden under the terms of Item Sixth at the death of Adele Chittenden Weller be accelerated so that he shall take immediately upon such election being exercised; also what proportion of said stock shall go to him and what proportion to the widow ?
It is quite clear that the intention of the testator deduced from the will is that the widow in no event should have an absolute interest in said stock, but that the same should ultimately go to and be the property of Oscar Leslie Teagarden. Therefore, if the widow elects to take under the law, the said stock will go immediately to Oscar Leslie *340 Teagarden absolutely, under the doctrine of acceleration of remainders as announced in the case of Holdren v. Holdren, 78 O. S. 276, subject, however, to the payment of the debts of the estate and the distributive share of the widow, if it be found necessary.
“Fourth, in the event the widow elects to take under the law rather than under the will, then under the terms of Item Sixth can Oscar Leslie Teagarden sell any of said stock in The J. Weller Company belonging to the decedent without the consent of the widow?”
If the widow elects to take under the law, then the stock which Oscar Leslie Teagarden will take as remainderman under the legacy, which will have accelerated, will be his absolutely and he can sell and dispose of the same without the consent of the widow.
“Fifth, in the event the widow elects to take under the will, then under the terms of Item Sixth, can she compel the trustee, Oscar Leslie Teagarden, to sell said stock in The J. Weller Company belonging to the decedent by serving a written notice upon him? The will covers apparently only a situation where the trustee - might be wishing to sell.
If the widow elects to take under the will, it is clear, under the terms of the will, that said stock cannot be sold without the consent of both the widow and Oscar Leslie Teagarden.
. “Sixth, in the event that the widow elects to take under the law rather than under the will, would the widow be compelled under Ohio Law to contribute to the payment of debts of said estate if by such an election the residue of the stockholdings going to Oscar Leslie Teagarden were cut down and he was prejudiced by her election to take under the law ?”
Section 10504-55, General Code, which is the statute providing for the election of the widow to take or not to take under the will, provides, in part, that “in the event of election to take under the statute of descent and distribution, such spouse shall take not to exceed one-half of the estate.” Counsel for plaintiff contends that this means one-half of the estate free of all debts.
*341 The term “estate,” as used in Section 10504-55, General Code, is not defined in the Probate Code. In many instances the precise meaning of the term “estate” can only be ascertained from the context. It will be observed that Section 10504-55, General Code, provides that the election by the widow is not made until after the “Filing of the inventory, appraisement and schedule of debts.” Upon this subject, the committee who prepared the original draft, as appears in their comment thereon, say: “Election is made after filing of inventory and schedule of debts, thus affording an opportunity to know what the estate consists of.” Bouvier says as the word is commonly used in the settlement of estates, it includes the debts as well as the assets of a decedent, all of his obligations and resources being regarded as one entirety. In the case of Stevens v. Underhill, 67 N. H. 68, 36 A. 370, it was held to include indebtedness as well as assets. In the case of Smith v. Terry, 43, N. J. Eq. 659, 12 A. 204, it was held that the amount of a deceased person’s estate is what he is worth after the payment of his debts. This court, therefore, is of the opinion and finds that the meaning of the term “estate” as used in Section 10504-55, General Code, is the amount of the estate after the payment of debts and costs of administration, and not the gross estate.
The specific answer to this question, therefore, is that if the widow elects to take under the law rather than under the will, she takes one-half of the estate after the debts and the costs of administration have been paid, and accordingly there is no contribution.
“Seventh, if the court finds that the estate is to pay the debts rather than the insurance, what personal property is to be exhausted first, in view of the specific bequests in the will?”
Since the court has found that, if the widow elects to' take under the will the debts of the estate must be paid from the life insurance payable directly to the widow, and since such insurance is more than ample to pay such debts, it becomes unnecessary to determine what the situation would be if such insurance should be insufficient to pay such debts.
*342 But if the widow elects to take under the law rather than under the will then such insurance can not be used to pay the debts of the estate, but the debts must be paid from the property, of the estate. If the widow elects to take under the law, then the provisions in her favor in the will are renounced by her, and the will must be construed then as if such provisions were not there. Page on Wills, Section 1218. In such case, all of the property bequeathed and devised to her in the will becomes intestate property, and the only legatee in the will will be Oscar Leslie Tea-garden, Trustee, and Oscar Leslie Teagarden. The legacy to Oscar Leslie Teagarden is a specific one, and can not be required to contribute to the payment of the debts of the estate until after all of the other real and personal property of the estate have been exhausted for that purpose. 40 Cyc. 2067.
“Eighth, if the debts are to be paid out of the life insurance, to what insurance does the testator refer, that payable to The J. Weller Company or that payable to the widow ?”
The court has already decided that the life insurance mentioned in the will refers to the insurance payable to the widow, and not that payable to the J. Weller Company. The court has come to this conclusion because The J. Weller Company acquired a vested interest in the policy payable to it at the time it was issued and the contract completed and it paid all the premiums on the same, and it therefore was the absolute property of the company. Further, The J. Weller Company is not a beneficiary in the will.
“Ninth, if the trustee refuses to serve without compensation, what happens ?”
Oscar Leslie Teagarden states in his answer that he does not refuse to serve without compensation as provided by said will, but is ready and willing to serve as such trustee strictly in accordance with the terms and provisions of said will pertinent thereto. This question, therefore, becomes a moot one.
The court having considered all the questions raised in *343 this case, finds and adjudges the true intention and construction of said will with reference to the provisions thereof in favor of the widow, Adele Chittenden Weller, and her rights if she elects to take under the law rather than under said will to be as follows:
“First. If the widow elects to take under the will, all of the debts owed by the testator at the time of his death shall be paid out of his. life insurance directly payable to her. If she elects to take under the law rather than under the will, such insurance is her absolute property, free and clear from all claims of the creditors, and exempt from all liabilities from any debt, or debts, of said testator; and in such event, the debts of said estate must be paid out of the estate as indicated in Item First of the will and not out of the life insurance as indicated in Item Eighth of the will.
“Second. Oscar Leslie Teagarden, as trustee under Item Sixth of the will, would have the same power and authority to vote said stock in The J. Weller Company as the owner thereof would have.
“Third. If the widow elects to take under the law rather than under the will, then the stock in The J. Weller Company mentioned in Item Sixth of the will will go immediately to Oscar Leslie Teagarden absolutely; subject, however, to the payment of the debts of the estate and distributive share of the widow, if it be found necessary.
“Fourth. If the widow elects to take under the law rather than under the will, then the stock in The J. Weller Company mentioned in Item Sixth of the will becomes the absolute property of Oscar Leslie Teagarden, and he, in that event, can sell and dispose of the same without the consent of the widow.
“Fifth. If the widow elects to take under the will rather than under the law, then the stock in The J. Weller Company mentioned in Item Sixth of the will cannot be sold without the consent of both the widow and Oscar Leslie Teagarden.
“Sixth. If the widow elects to take under the law rather than under the will, then she takes one-half of the estate after the debts and the costs of administration have been paid, and accordingly there is no contribution.
“Seventh. If the widow elects to take under the will rather than under the law, then the debts of the estate must be paid from the life insurance payable directly to the widow, which the court finds to be ample for that purpose. But if the widow elects to take under the law rather *344 than under the will, then such insurance can not be used to pay the debts of the estate, but the debts must be paid from the property of the estate. If the widow elects to take under the law rather than under the will, then the provisions in her favor in the will are renounced by her, and the will must be construed as if such provisions were not there, and in such case all of the property bequeathed and devised to her in the will becomes intestate property, and the only legatee in the will will be Oscar Leslie Tea-garden, Trustee, and Oscar Leslie Teagarden. The legacy to Oscar Leslie Teagarden is a specific one, and can not be required to contribute to the payment of the debts of the estate until after all of the other real and personal property of the estate have been exhausted for that purpose.
“Eighth. The life insurance mentioned in the will refers to the insurance payable to the widow, and not that payable to TJhe J. Weller Company.
“Ninth. Oscar Leslie Teagarden having stated his willingness to serve as trustee under the provisions of said will in accordance with the terms and provisions thereof pertinent thereto, what would happen if he refused to thus serve becomes a moot question.”
A journal entry may be prepared in accordance with the finding and judgment of the court as stated herein, and an exception is saved for the plaintiff and for the defendant Oscar Leslie Teagarden in so far as the finding and judgment herein is adverse to her or him.