NANCY J. HATHAWAY and others, in equity, *vs.* HARVEY H.
SHERMAN, administrator, and others.

*Life insurance—construction of the statutes relating to the disposition of moneys arising therefrom.*

One who dies insolvent can make no testamentary disposition of the fund accruing from an insurance policy upon his life if he leave neither widow nor child; in such event, the insurance money becomes assets for the payment of debts.

A person having an insurance upon his life, dying insolvent, leaving a widow and children, may bequeath the insurance money among them as he pleases; but he cannot bestow it by will upon any other persons. The power to dispose of such fund by will, conferred by R. S., c. 75, § 10, is limited, in case of insolvency, to a disposition among the widow and children of the deceased.

An intention on the part of a testator, by his will, to dispose of the fund arising from an insurance policy upon his life, will not be inferred from the fact that his bequests were ultimately found to exceed the whole amount of his estate exclusive of this fund; nor from the fact that he designated a person as the legatee of the residue of his property of every description whatsoever. "The testator's intention to change the direction which the law gives to this very peculiar species of property is not to be inferred from general provisions in his will, the fulfillment of which might require the use of such money, but must be explicitly declared."

BILL IN EQUITY.

This was an amicable bill in equity brought by the widow of late James W. Hathaway, by the guardians of his children, and by his sister, Mrs. Dillingham, for and in behalf of her children, as complainants, against the administrator with the will annexed of said James' estate and the residuary legatee named in the will in order to obtain a construction of that instrument, which (omitting the attesting clause and execution, in ordinary form) was as follows :

"In the name of God, amen :

I, James W. Hathaway, of Bangor, in the county of Penobscot, and State of Maine, do make, publish and declare this my last will and testament in manner and form following, viz:

1. I order and direct that all my debts and funeral expenses be paid as soon as may be after my decease.

2. I give and bequeath to my beloved wife, Nancy J. Hathaway, the interest of five thousand dollars, so long as she remains unmarried and my widow. The amount not to include what is insured on my life for her benefit, but together with the same in lieu of her right of dower in any of my property of every description whatsoever.

3. I give and bequeath to my son, James N. Hathaway, five hundred dollars, besides the amount insured on my life for his benefit. And to my son, George E. Hathaway, I give and bequeath five hundred dollars.

4. I give and bequeath to my daughter, Evangeline Hathaway, two thousand dollars.

5. I give and bequeath the interest of two thousand dollars to be expended for the education of the children of my sister, Prudy Dillingham, of Temple, of this State, until they each arrive to the age of twenty-one years. And I herein order that the aforenamed legacies be paid, and annuities be conferred as soon as may be after my decease.

*Lastly.* The residue of my property of every description whatsoever, I give and bequeath, and herein order to be converted into money and devoted to the education of indigent students attending the East Maine Conference Seminary, at Bucksport, who are fitting for the Methodist ministry. And I herein direct that said legacy be held as a trust fund by the Board of Education of the East Maine Conference, and that only the annual interest of the same be so expended or conferred, and that no student shall receive more than one hundred dollars annually, and that only such students shall be beneficiaries of the aforesaid fund, as are recommended for the purpose by the faculty of the said Seminary."

The East Maine Conference Education Society was an unincorporated association, and its officers and managers were made defendants and represented its interests in this cause. It was admitted that a son of the testator named Frank, still living, was given away by his parents in infancy to one Richard H. Smith, who had adopted him as provided by statute, and that the testator said to the

scrivener who drew the will, that he omitted all mention of Frank because of such adoption; whether or not he supposed such adoption would make Frank an heir of said Richard did not appear; but, in fact, said Richard died after the bringing of this bill without making any provision for said Frank by will or otherwise.

It was further admitted that the testator's real estate was appraised at seventy-seven hundred dollars, a portion of this realty being under mortgage to secure debts hereinafter described, the full value of the real estate, however, being as above stated without any deduction on account of the mortgages; that the personal property, consisting of furniture and library was valued at four hundred forty-three and $\frac{50}{100}$ dollars; that the rights and credits besides the life policies hereinafter named were valued at thirteen hundred seventy-eight and $\frac{93}{100}$ dollars; that one hundred ninety-two and $\frac{2}{100}$ dollars had been paid out within three years on the two life policies issued in the name of said Nancy and James N. Hathaway, and that in addition to the assets aforesaid the deceased had, at the time of his decease, then existing upon his own life, in the Charter Oak Life Insurance Company, two policies, for one thousand dollars each, one made payable to his said wife, and one to his said son James N.; and also three other policies on his own life and payable to himself or his administrator, one in the Charter Oak Company for one thousand dollars, one in the Homœopathic Life Insurance Company for one thousand dollars, and one in the National Life Insurance Company of New York for five thousand dollars; all which policies have been adjusted and will unquestionably be paid, deducting certain liens upon them, amounting in all to about eight hundred twelve and $\frac{57}{100}$ dollars, so that the amount expected to be received from the last named three policies was $6,187.43; that the whole amount of estate thus inventoried and appraised, inclusive of said life policies, was fifteen thousand nine hundred one and $\frac{98}{100}$ dollars, and exclusive thereof, $9,714.55; that claims against the estate in favor of creditors had been already presented or come to the knowledge of the administrator to the amount of about seventy-six hundred and fifty dollars, to most

of which there is no defence or objection, and it is believed other demands may yet be presented for payment; that the amount due for legacies bestowed by said will unconditionally was three thousand dollars, and the sum required to be set aside as a fund during the widowhood of said Nancy and during the minority of said Dillingham children is seven thousand dollars, whereas the whole amount of estate as appraised over and above said indebtedness, exclusive of such life policies, is only about two thousand dollars, and inclusive thereof only about eight thousand dollars.

Inasmuch, therefore, as serious doubts arose as to the rights of the several parties in interest under this will, and as to its construction, and who should administer the trusts raised by said will; in order to dissolve such doubts and enable the estate to be speedily settled, the parties submitted this cause to the court to determine and make known the proper construction of the several provisions of said will, and other matters connected therewith, and more especially the following, viz.:

1. In what manner and among what parties the funds arising from the life policies, other than the two first named, should be divided, or what appropriation should be made thereof, under the various contingencies which may occur in the settlement of the estate, and especially under the contingency of the estate being insolvent or of the widow waiving the provisions of the will and claiming dower and allowance as she proposed to do. Can any part go to pay debts or the legacies to the children or the sums provided for the widow and Dillingham children, and if so, what proportion, if not enough for all?

2. Upon whom devolves the trust of holding the sums devised for the benefit of Mrs. Prudy Dillingham's children, and of the widow, if she does not waive the provisions of the will, and seeing to their appropriation, and what shall be done with the fund when the children arrive at the age of 21 years or the widow dies or remarries?

3. And inasmuch as there is no corporation known by the name indicated in the last item of the will, but only a private society or

association by the name before indicated, if there be any residue to be shared under that clause, who shall receive the same, and to whom shall the same be paid ?

4. Of what shall such " residue " consist and how shall the same be determined, and whether especially any part of the debts or widow's allowance shall be paid out of the money coming from the life policies, or the sums devised to the sons and daughters, or the sums set apart for the said widow and Dillingham children, and does the said residue embrace any sum except what may be left after paying all said sums ?

5. Said Frank H. Smith having been wholly unnoticed in said will and no provision being made for him, whether any portion of the estate or of the life policies should be paid or go to him, the testator having, at the time of making the will, made mention to the scrivener who wrote the will that his son Frank had been adopted and was already provided for, referring as is believed to the fact that he was adopted by a man of considerable property, but whether or not he supposed he would be heir to his god-father is not known.

6. And in general to construe and settle the rights of the different parties, under the will and the manner in which the assets shall be divided and appropriated by the administrator aforesaid, and the trusts raised by the will executed and carried into effect.

*Albert W. Paine*, for complainants.

*H. K. Baker*, for Hathaway boys.

*R. Foster*, for Frank H. Smith.

*H. H. Andrews*, for respondents.

BARROWS, J.   This case calls for a careful examination of certain provisions contained in our statutes, relative to moneys which may accrue from life insurance, and to the disposition thereof by the insured or his personal representatives, and the adoption of such a construction of any ambiguous or indefinite expression found

therein, as shall best accord with the true intent and meaning of all the statutes touching the matter under consideration.

Section ten of chapter seventy-five of the Revised Statutes runs thus:

" A sum of money received for insurance on his life, deducting the premium paid therefor within three years with interest, does not constitute a part of his estate for payment of debts, or purposes specified in the first section of chapter sixty-six when the intestate leaves a widow or issue, but descends one-third to his widow and the remainder to his issue; if no issue the whole to the widow, and if no widow the whole to the issue. It may be disposed of by will though the estate is insolvent."

In R. S., c. 64, § 46, which defines the powers and duties of executors and administrators, among the articles " which shall be omitted in making the inventory and shall not be administered upon as assets," the fourth specification is, " any sum of money becoming due on the death of the deceased from an insurance on his life effected by him, after deducting the amount of premium paid therefor within three years with interest, provided such deceased left a widow or issue; but such sum shall be disposed of as provided by section ten, chapter seventy-five; " which is the section first above cited.

But by c. 87, § 1, " writs and executions against executors . . . for debts due from the deceased, run against his goods and estate in their hands."

By c. 64, § 41, every executor or administrator is required to " make and return upon oath into the probate court a true inventory of the real estate, and of all the goods, chattels, rights, and credits of the deceased which are by law to be administered, and which come to his possession or knowledge."

From this inventory, besides the money accruing from life insurance as above specified, nothing is to be omitted except the wearing apparel of the deceased, not exceeding one hundred dollars in value; if he left a widow or minor children, the apparel and ornaments of the widow, and the apparel and school books of minor

children, together with such provisions and other articles, not exceeding fifty dollars in value, as have necessarily been consumed in his family before the appraisal.

That it is the policy of the law to subject, with the exception of these trifles, all that can be fairly called the 'property of the deceased (even that which was by law exempt from attachment and seizure on execution for debt in his lifetime). " to the purposes specified in the first section of chapter sixty-six," and consequently to the payment of his debts, is shown by numerous provisions to that end. In laying down rules for the descent of the real estate of persons deceased intestate, it is first expressly made subject to the payment of debts. R. S., c. 75, § 1.

" The personal estate of an intestate, except that portion assigned to his widow by law and by the judge of probate, is to be applied, first, to the payment of his debts, funeral charges and charges of settlement " or, more briefly stated, to the purposes specified in the first section of chapter 66, and only the residue is to be distributed. R. S., c. 75, § 8. And the claims of devisees or legatees are entirely postponed to those of creditors, in the statutes authorizing the disposition of property by will in these emphatic terms :

" No part of the estate can be exempt from liability for payment of debts if required." R. S., c. 74, § 7. In marked contrast to what appears to be the general purport and design of the statutes regulating the disposition to be made of the property of persons deceased, stands this provision first above quoted touching the disposition to be made of the proceeds of life insurance policies.

A hasty reading of this section, without reference to other statute provisions, would be likely to carry the idea that any sum of money thus accruing after death, however large in proportion to the estate left by the decedent at his death, no matter what the condition of his estate as to indebtment, was not to be subject to the payment of his debts, but might be disposed of by him in his will to whomsoever he pleased, precisely as he might dispose of any surplus property after his debts were paid.

A little consideration, however, satisfies us that there are conditions and limitations here which must not be overlooked.

It is manifest that the legislature looked upon this fund, which from its very nature can never be possessed or enjoyed by the decedent, in a different light from that in which they viewed his estate and property generally. But perhaps it is not essential for us here and now to determine whether this money, which does not become payable to anybody until after his death, and then only in case the proper steps are taken to fix the liability of the insurance company, can, strictly speaking, rightly be regarded as property of the decedent. He certainly has a qualified interest in it, and there is at all events a right which he can transmit to his personal representatives, and, under some circumstances, can bequeath.

The questions arising here are, what, if any, are the conditions and limitations of this power to bequeath? Is it effectually exercised when a testator in his will simply gives legacies which his property, after paying his debts, is found insufficient to meet, and concludes by a general residuary bequest?

1. As to the conditions and limitations of the power to dispose of this fund by will, we remark, in the first place, that it is only when the insured leaves a widow or issue that he can exercise any testamentary power whatever over this fund if his estate prove insolvent. If he leaves neither widow nor issue, these special provisions have no application to his case at all. The fund is to be inventoried by his executor or administrator as part of his assets, subject to the payment of debts, and it is only upon the residue, after answering all prior legal calls, that any testamentary provisions he may make will take effect.

Is it conceivable that when the legislature have made the existence of a widow or issue an essential condition to the exercise of any power over this fund by an insolvent testator, they intended to allow him to bestow it where he pleased as if he left neither widow, issue, nor creditors?

There is such an inconsistency here as induces us to believe that such could never have been the design.

Before revision the statute stood thus: First, it laid down the rule that, aside from the excepted premiums, the money thus derived, "upon the death of any person who shall leave a widow and issue or either," was to be distinguished from other property of the deceased, that it should make no part of his estate for the payment of his debts, the funeral expenses, the expenses of administration or those of the last sickness, or the allowance to the widow or widower or children, nor even for the discharge of public rates or taxes. Then it directed the appropriation of the money to or among the widow and issue in the case of an intestate estate, and concluded with the following proviso: "That nothing herein contained shall prevent such person from providing, by will, for the distribution of such sum among his widow and issue, or either of them, in any other proportion, but such testamentary disposition shall be carried into full effect notwithstanding the insolvency of the estate." Laws of 1844, c. 114.

We think that if the legislature had intended in the revision so to enlarge this testamentary power, as to permit the insolvent testator to divert the fund or any part of it from his widow and issue, they would not at the same time have made its existence still dependent upon his leaving a widow or issue to survive him. Why make the survivorship of a widow or issue an indispensable condition of a grant of power to a testator to divert the fund not only from his creditors, but also from these very parties who seem to have been designed by the legislature in these provisions, to be the exclusive beneficiaries from this species of investment? The object of the legislature seems to have been to designate this very peculiar species of property as a disposition of his funds in advance, which any man may make so firmly, that, with the exception of certain premiums paid to secure it, the whole shall go after his death for the benefit and enjoyment of those who are in general dependent upon him for support while he lives, without regard to the claims of creditors, and to give him power simply to regulate the proportions in which it should be divided among those interested according to his view of their necessities or their deserts.

We do not think the abridgement in the revision should be construed as extending this power, for the benefit of any other objects of his bounty to the exclusion of his creditors, so long as it remains an essential pre-requisite to his exercise of such power that the widow or issue should survive him. A man who makes an investment of this sort, with these statutes before him, should understand that he makes it for the exclusive benefit of his widow or issue or some of them, if they or any of them survive him, and that in case of such survivorship, his testamentary power over it extends only to the designation of those among them who shall receive it, and the shares which each or any shall respectively receive. This, at any rate, must be the construction in all cases where, aside from the fund thus created, the estate is insolvent, *i. e.*, in all cases where, but for this provision of the statute, the decedent could make no valid disposition of the money as against creditors.

2. Whether the statute provision ought to be considered as limiting the power of a solvent testator, or of one who by appropriating a portion of the insurance money to the payment of his debts might make his estate solvent, over money thus accruing in cases where the decedent leaves a widow or issue, we deem it unnecessary now to decide, because we find in the will before us no language which we think authorizes us to conclude that it was the intention of the testator to dispose of this fund. The only arguments in favor of the hypothesis that such was his intention are found in the facts that he made bequests very considerably exceeding, in the aggregate, the amount of his estate, real and personal, exclusive of this fund, and that he made a final bequest of the residue of his property of every description whatsoever. The first of these facts is entitled to but little weight. The records of every probate court show too many instances of wills containing liberal bequests which the testators left no means, or very inadequate means, to fulfill, to justify us in concluding from this circumstance that the testator designed to change the disposition which the law would otherwise make of this fund, which he nowhere mentions as a source from which money to pay the legacies he gives is to be derived.

As to the claim that the fund would pass under the bequest of the residue of the testator's property, we remark that the legislature have placed all funds thus accruing in the same category with the wearing apparel of the deceased and that of his wife and minor children, and the provisions consumed in his family before the appraisal of his estate. Provided he leaves a widow or issue, the legislature have so distinguished between moneys thus accruing after his death and the rest of his property, that they are not assets in the hands of his administrator for any of the ordinary purposes to which the property of persons deceased is devoted by law; but on the contrary, they are classed with certain items of a character so peculiar that none of them can be considered as liable to be sold for the payment of pecuniary legacies, or as passing under a general residuary clause. It may be competent for a solvent testator who leaves a widow and minor children, to make by his will a different disposition of his wearing apparel from that which the law would otherwise make, but assuredly not an article of it would be considered as passing under a general residuary clause, or as liable to be sold for the payment of legacies unless specifically so ordered. So with the moneys accruing from life insurance policies after the death of the testator. If it be held that under the general statute authorizing the disposition of property by will a solvent testator, or one whose estate would be solvent with the addition of the fund thus created, may authorize his executor to use this fund for the payment of his debts, and otherwise dispose of it in a manner different from that which the law contemplates or will allow in the case of an insolvent estate, we think, in order to effect his object, the testator must use language directly significant of his intention in this respect; that, classed by the legislature as this fund is, it is not to be appropriated to the payment of debts or of any pecuniary legacies couched in general terms merely, even to the widows or children, unless it is expressly referred to as the fund from which such payment is to be made, and that it does not pass by any general residuary clause; in short, that the testator's intention to change the direction which the law gives to this very

peculiar species of property, is not to be inferred from general provisions in his will the fulfillment of which might require the use of such money, but must be explicitly declared.

Our conclusions in the case at bar are, that it is not competent for the executor to use any part of the moneys accruing from the life insurance policies, save the premiums and interest excepted in the statute, for the payment of debts, allowance to widow, or legacies bequeathed in the will. The testator has not declared his intention to change the disposition which the law makes of that fund, nor charged upon it the fulfillment of any of the provisions of his will. It must be distributed as the statute provides, one-third to the widow, two-thirds to the children, including Frank H. The will is to be executed so far as the condition of the estate in the matter of indebtedness will permit.

Looking at the representations made in the bill of the amount of debts which had come to light when the bill was filed, and the probability that the widow would claim her dower and allowance, instead of relying upon the provision made for her in the will, we deem it unnecessary at the present time to make further answers to the questions raised.

If a more favorable turn of the affairs of the estate than can reasonably be anticipated should make such answers desirable, they can be reached upon a case briefly stated by the parties interested.

> *Decree to be entered in accordance with the views herein expressed. Costs of all parties to be paid out of the estate.*

APPLETON, C. J.; CUTTING, KENT, and WALTON, JJ., concurred.