HERBERT L. JORGENSEN, Clifford B. Jorgensen, Agnes Jorgensen, Mildred Weeks, Maude Borland, George Laymon Jorgensen, and Earl Jorgensen, Appellants, v. ETHEL J. DEVINEY, Individually, and as Executrix of the Estate of Alfred Jorgensen, deceased, Respondents.

(222 N. W. 464.)

64

Opinion filed January 31, 1928.

*Carr & Rittgers,* for appellants.

*Richardson, Green & Wattam,* and *Aylmer & Aylmer,* for respondents.

CHRISTIANSON, J.   On January 16, 1917, the North American Life Insurance Company of Chicago, Illinois, issued a policy in the sum of $5,000, upon the life of Alfred Jorgensen.   The policy was made payable to the "executors, administrators or assigns of the insured," and contained the following provisions:

"Change of Beneficiary.   The insured, if there be no existing assignment of this policy made as herein provided, may, while the policy is in force, designate a new beneficiary, by filing written notice thereof at the Home Office of the Company, accompanied by this policy for suitable endorsement.   Such change shall take effect upon the endorsement of the same on the policy by the Company, whereupon all rights of the former beneficiary or beneficiaries shall cease.   The insured may in like manner designate a beneficiary in succession, to be known as contingent beneficiary.   If any beneficiary shall die before the Insured, the interest of such beneficiary shall vest in the Insured.

"Assignments.   No assignment of this policy shall be binding upon the Company, unless it be filed with the Company at its Home Office. The Company assumes no responsibility as to the validity of any assignment."

. The insured died on or about June 20, 1925, leaving as his sole heirs at law four sisters, Emma Anderson, Anna M. Jorgensen, Ella D. Lord, and Ethel J. DeViney, and seven nieces and nephews, Herbert L. Jorgensen, Clifford D. Jorgensen, Agnes Jorgensen, Mildred Weeks, Maude Borland, George Laymon Jorgensen and Earl Jorgensen.   The nieces and nephews were the children of two deceased brothers.   The deceased left a last will and testament, which contained, among others, the provisions:

". . . That in the event of my death occurs prior to the death of my youngest sister Ethel Jorgensen, that all of my life insurance be paid to my said sister (Ethel Jorgensen) and that no deduction be made therefrom, nor any division made thereof with other surviving relatives. . . .

"I hereby appoint Ethel Jorgensen executrix of this my last will and testament, without bond." .

Upon proceedings duly had in the county court of Stutsman county, the will was admitted to probate, and the said Ethel Jorgensen (who in the meantime had married and whose present name is Ethel J. DeViney), was appointed executrix of the said last will and testament of said Alfred Jorgensen. The North American Life Insurance Company of Chicago, in accordance with the terms of the policy, paid the sum of $5,000 to the said Ethel J. DeViney, executrix of the said last will and testament of Alfred Jorgensen. The sole question involved in this controversy is whether the provision in the will is effective and entitles Ethel J. DeViney to retain all the proceeds of the life insurance policy; or whether such proceeds belong to, and should be distributed among, the heirs at law of the said Alfred Jorgensen.

It seems to be conceded that in the absence of § 8719, Comp. Laws 1913, the insured would have had the right to dispose of the insurance policy or the avails thereof by will; but it is contended by the plaintiffs that this section takes away from the insured the right and power to dispose by will of a life insurance policy or the avails of a life insurance policy, which falls within the purview thereof. The case therefore involves an interpretation and application of § 8719, Comp. Laws 1913, which reads:

"The avails of a life insurance policy or of a contract payable by any mutual aid or benevolent society, when made payable to the personal representatives of a deceased, his heirs or estate upon the death of a member of such society or of such insured shall not be subject to the debts of the decedent except by special contract, but shall be inventoried and distributed to the heirs or the heirs at law of such decedent."

Plaintiffs brought this action on the theory that under this section Jorgensen had no right to dispose of the insurance policy or the avails thereof by will; that the provision in Jorgensen's will purporting to

bequeath such policy to Jorgensen's sister was wholly ineffectual, and that such policy and the avails thereof belong to the heirs at law of said Alfred Jorgensen and must be distributed to them. The defendant, on the other hand, contends that the provisions of § 8719, supra, are not applicable to this case and that the proceeds of the policy must be distributed in accordance with the directions of Jorgensen's will.

In support of their contention plaintiffs cite and rely upon the following decisions of this court: Finn v. Walsh, 19 N. D. 61, 121 N. W. 766; Farmers State Bank v. Smith, 36 N. D. 225, 162 N. W. 302; Marifjeren v. Farup, 51 N. D. 78, 199 N. W. 181; Re Coughlin, 53 N. D. 188, 205 N. W. 14; Talcott v. Bailey, 54 N. D. 19, 208 N. W. 549.

We are of the opinion, however, that the precise question involved in this case has not been determined in any of the cases cited.

Finn v. Walsh, supra, involved the proceeds of beneficiary certificates in two fraternal organizations,—each of such certificates being payable to the "legal heirs" of the insured. In a will made more than a year and a half before he died, the insured had designated two persons not related to or dependent upon him (one of them being his affianced wife) as legatees of all his personal property and further stated that he bequeathed to them all his "life insurance of every name and description." The county court distributed the avails of the two beneficiary certificates according to the provisions of the will. The heirs at law, affected by the decision, appealed to the district court; the district court reversed the decision of the county court and ordered the avails of the beneficiary certificates to be distributed to the heirs at law of the insured. The administrator with the will annexed and the two legatees appealed to this court and urged as grounds for reversal of the judgment of the district court:

(1) That the county court was without jurisdiction;

(2) That the provisions of the will operated as a change of beneficiaries and that the societies had waived their by-law provisions;

(3) That under the statutes of this state, the proceeds of these certificates became a part of the decedent's estate and must, therefore, be distributed according to the terms of the will.

In disposing of these contentions, this court said (19 N. D. pp. 66, 67, 69):

"The view we take of the first proposition renders it not only unnecessary, but improper, to dispose of the other very interesting questions presented. It is entirely plain that the county court in assuming to adjudicate the question as to the respective rights of these parties to this fund, exceeded its jurisdiction, and it is equally plain that the district court on such appeal committed error so far as it assumed to adjudicate such question and to direct the county court to make and enter a final decree of distribution, decreeing, assigning, and vesting in respondents as such heirs the said sum of $3,031.14, being the proceeds of such beneficiary certificates. Such fund is and was no part of the decedent's estate; hence the county court had no jurisdiction over it, and could not, therefore, enter any valid judgment with reference to the distribution thereof."

In Farmers State Bank v. Smith, supra, § 8719 was again drawn in question. That case involved an ordinary New York Life Insurance policy which was made payable to the "estate" of the insured. The administrator collected the proceeds of the policy and a creditor of the insured contended that such proceeds should be used for the purpose of paying his claim, and the claims of other creditors, against the decedent. This contention was in turn predicated upon the premise that § 8719 allowed an unreasonable and unlimited amount of exemptions, and consequently violated § 208 of the state Constitution. This court held that § 208 of the Constitution had no application, and hence, had not been violated; "that, as the statute (§ 8719), was in force at the time of the taking out of the policy, the intention of the deceased must be presumed to have been that his heirs should take the money," and such being the case, the money did not become part of the general estate of the deceased, and subject to the claims of his creditors; that § 8719, evidenced a legislative intention "that the administrator or executor should inventory the policies (falling within the statute) and the amount, if any received thereon, and that he should then distribute the proceeds to the heirs, rather than put the same into the estate." In support of the contention that the statute was unconstitutional, the respondent in that case asserted that under § 6629, Comp. Laws 1913, a life insurance policy was property and subject to disposition as such; that consequently the avails of life insurance policies payable to the estate of the insured became and were general assets of the estate, and

that insofar as § 8719 sought to exempt such avails it was an exemption statute within, and subject to, the provisions of § 208 of the state Constitution. In disposing of that contention this court said:

. "Nor do we find any argument against the position taken by us, in the suggestion of counsel for the respondent, that § 6629 of the Compiled Laws of 1913 provides that "a policy of insurance upon life or health may pass by transfer, will or succession to any person, whether he has an insurable interest or not, and such person may recover upon it whatever the insured might have recovered." This provision is in no way inconsistent with § 8719, supra. Section 8719 merely provides that in the eyes of the law a policy which is made payable to one's personal representatives or heirs or estate shall be deemed to have been made to the heirs, and that such .policy shall go to such heirs free from the debts of the deceased. Section 6629 provides that such a policy may pass by transfer, will or succession. Section 6629 was the basic law. It first appeared as § 1636 of the old territorial Revised Codes of 1877. It merely provided that a life insurance policy could pass by transfer, will or succession, and went no further. There was nothing to prevent the legislature from adding to or amending this statute. This was done in § 8719 of the Compiled Laws of 1913, which was first enacted as § 24 of chapter 111 of the Laws of 1897, and which amended § 6385 of the Revised Codes of 1895, where the provision first appears. There is nothing inconsistent between the provisions of §§ 6629 and 8719, of the Compiled Laws of 1913. Even after the enactment of § 8719, a testator could still provide by special contract that the proceeds of life insurance policies payable to his heirs or estate should be subject to his debts, and then transfer or will the remainder.

"The only question is, Who should .the policy pass to and shall it be burdened with debts or not? If made to the heirs in name it would certainly not have been burdened with the debts of the deceased. All § 8719 provides is that if payable to them by the general term "heirs" or made payable to "the representatives" or "estate" it shall in like manner be considered a trust fund. This, of course, does not prevent one from making a special contract either in the policy or in the will by which the proceeds of the policy may be made subject to the debts

of the deceased and the residue only made payable to the beneficiary or legatee." 36 N. D. p. 233, 162 N. W. 302.

Marifjeren v. Farup, 51 N. D. 78, 199 N. W. 181, supra, involved life insurance policies payable to the "estate" of the insured. The insured left a will in which he directed that his funeral expenses and all just debts should be fully paid; that the executor as soon as possible, should sell and convert into cash all property of which the decedent might die seized, and that after these directions had been fulfilled and all expenses in the administration of the estate had been paid, the balance of the estate should be paid to the trustee named in the will and by him disbursed according to the directions given. The will made no direct reference to the insurance policies or the proceeds thereof. The widow and children of the defendant claimed the proceeds of the insurance policies as his heirs at law under § 8719. The executor and trustee contended that the proceeds of such policies were part of the trust fund created by the decedent in his will and should be paid over to the trustee. This court held that the avails of the policies belonged to the heirs at law and did not become a part of the trust fund created by decedent's will.

Talcott v. Bailey was a contest between the widow of the insured and his daughter by a former marriage. The insured left a will by the terms of which he gave, devised and bequeathed to a sister an undivided one-tenth interest, and to his wife an undivided nine-tenths interest, in all property of every nature and description. No reference whatever was made in the will to the life insurance policies or the proceeds thereof; and the question presented for determination in that case was whether the proceeds of the life insurance policies passed under the terms of the will or were distributable to the heirs at law of the insured according to § 8719. In the decision in that case, the former decisions of this court interpreting § 8719 were analyzed at some length, and it was held that the proceeds of the life insurance policies were not affected by the provisions of the will but should be distributed to the heirs at law of the decedent.

In the decision in Talcott v. Bailey, 54 N. D. 19, 208 N. W. 549, this court said:

"Assuming, without deciding in what manner, that a policy payable to the heirs or the estate of the insured may be transferred by pro-

visions in the will, the question here is, was such a transfer effected so as to deprive the heirs of the right to the proceeds, under section 8719 supra? We think not. Clearly, the effect of section 8719 is not to put the "heirs" in any better position than they would have been in had their names been written into the policies as beneficiaries thereunder. We are satisfied that the purpose of that statute was and its effect is to fix the meaning of the term "heirs" "representatives" or "estate," when used in insurance policies to designate the beneficiaries. Clearly, also, the right to transfer the policy by will or assignment still remains under § 6629 supra. That is, § 6629 was not repealed by § 8719."

In the opinion denying a rehearing the holding in the former opinion in the case and in the previous decisions was epitomized in the following language:

"It is earnestly contended by the appellant that the effect of the decision in this case is to destroy 'freedom of contract—that is, the right to contract for insurance for one's own benefit upon one's own life.' No such result follows, either from the decision in the instant case or from the cases cited in the opinion. All this court has said is simply that, when a policy is payable to 'the personal representatives of a deceased, his heirs or estate,' the avails of such a policy must be distributed to the persons belonging to the class enumerated in the same manner and with the same legal effect as if the names of the 'heirs' had actually been specified in the contract of insurance. *Neither the statute (Comp. Laws 1913, § 8719), nor any decision of this court limits, or attempts to limit, the right of the insured and the insurer to contract as they may see fit with respect to the proceeds of the policy or its transfer by will or assignment."*

From the foregoing it is apparent that the precise questions involved in this case have not been determined by this court in any of the previous cases.

These questions are:—(1) May the insured in a life insurance policy, made payable to the "executors, administrators or assigns of the insured," dispose by will of such policy or the avails thereof, where such policy was issued after § 8719 became effective? And, (2) If so, did the provisions of the will involved here bequeath the policy in

suit to Ethel J. DeViney, and entitle her to retain the avails thereof as her individual property?

The great object of statutory construction is to ascertain and give effect to the intention of the lawmakers as expressed in the law. If such intention is not clearly expressed in the statute, the court is warranted in availing itself of all legitimate aids to ascertain such intention. The object sought to be accomplished is a potent factor to be considered in determining the meaning of not only the principal but also the minor provisions of a statute. 2 Lewis's Sutherland, Stat. Constr. 2d Ed. § 456.

"It is proper to consider the origin and history of the law, the prior condition of the law, and the general policy and course of legislation. There are few guides to construction more useful than that which directs attention to the prior condition of the law to aid in determining the full legislative meaning of any statutory change thereof. The legislative department is supposed to have a consistent design and policy and to intend nothing inconsistent or incongruous. The mischief intended to be removed or suppressed or the cause or necessity of any kind which induced the enactment of a law are important factors to be considered in its construction. The purpose for which the law was enacted is a matter of prime importance in arriving at a correct interpretation of its terms." 2 Lewis's Sutherland, Stat. Constr. 2d Ed. § 471.

In the Civil Code of the Territory of Dakota for 1877 it was provided:

Section 683: "Every person over the age of eighteen years of sound mind may, by last will, dispose of all his estate. . . ."

Section 686: "Every estate and interest in real or personal property, to which heirs, husband, widow, or next of kin might succeed, may be disposed of by will."

Section 1636: "A policy of insurance upon life or health may pass by transfer, will or succession, to any person, whether he has an insurable interest or not, and such person may recover upon it whatever the insured might have recovered."

Section 1637: "Notice to an insurer of a transfer or bequest thereof is not necessary to preserve the validity of a policy of insurance upon life or health, unless thereby expressly required."

These provisions have never been repealed. They were re-enacted without change in the Revised Codes of 1895. Rev. Codes 1895, §§ 3639, 3642, 4612 and 4613. And are still the law of this state. Comp. Laws 1913, §§ 5640, 5643, 6629 and 6630.

Section 8719 first appeared as § 6385 of the Revised Codes of 1895, being a part of the Probate Code adopted at that time. The section was later amended and adopted in its present form as a part of chapter 111 (§ 24), Laws of 1897, entitled "An act to amend the Probate Code of the state of North Dakota." In its original form the section read as follows:

"The avails of a life insurance policy or of a contract payable by any mutual aid or benevolent society upon the death of a member of such society are not subject to the debts of the decedent except by special contract, but in other respects shall be inventoried and disposed of like other property."

The statute, as amended by the Act of 1897, reads as follows: .

"The avails of a life insurance policy or of a contract payable by any mutual aid or benevolent society, *when made payable to the personal representatives of the deceased, his heirs or estate,* upon the death of a member of such society, or of such insured shall not be subject to the debts of the decedent except by special contract, *but shall be inventoried and distributed to the heirs or heirs at law of such decedent."*

It will be noted that the legislative enactment of 1897 made two changes in the law of 1895. The statute of 1895 provided that "the avails of a life insurance policy or of a contract payable by any mutual aid or benevolent society . . . are not subject to the debts of the decedent except by special contract." The 1897 enactment specifically describes the insurance contracts covered, and limits the rule of the statute to policies or beneficiary certificates that are "made payable to the personal representatives of a deceased, his heirs or estate."

The original enactment provided that the avails of policies or beneficiary certificates falling within the provisions of the act, though not subject to the debts of the decedent, "shall in other respects be inventoried and disposed of like other property." The amended act provides that such avails "shall be inventoried and distributed to the heirs or to the heirs at law of the deceased."

The great purpose of the original section was to render the avails of life insurance policies and beneficiary certificates exempt from the debts of the insured, unless he had entered into a special contract to the effect that such avails should go to a creditor or creditors in payment of some debt or debts. It seems quite clear that the original section placed no restriction upon the right or power of the insured to dispose of life insurance policies or beneficiary certificates or the avails thereof by contract or by will. Rison v. Wilkerson, 3 Sneed 565; Williams v. Carson, 9 Baxt. 516; Gosling v. Caldwell, 1 Lea, 454, 27 Am. Rep. 774. The mandate of the statute was that the avails of a life insurance policy or a beneficiary certificate should not be subject to the debts of the decedent except by a special contract; but that such avails in other respects should "be inventoried and *disposed of like other property*" of the decedent, i. e.,—in case the decedent left a will, the avails would be disposed of in accordance with the provisions of the will, and, if he died intestate, they would be disposed of according to the laws of succession.

The question presented therefore resolves itself to whether the amendments to the statute, adopted in 1897, changed the purpose and effect thereof so as to restrict or inhibit an insured from disposing by will of a life insurance policy or the avails of a policy, made payable to his "personal representatives," his "heirs" or his "estate."

We are not aware of any reasons that might have actuated the legislature in making the amendments, outside of those evidenced by the language employed in the amendatory statute. It has been suggested that the legislative enactment of 1897 was occasioned by certain decisions of the supreme court of South Dakota and Minnesota (See Skinner v. Holt, 9 S. D. 427, 62 Am. St. Rep. 878, 69 N. W. 595; Re How, 61 Minn. 217, 63 N. W. 627), wherein statutes purporting to render insurance policies or the avails thereof exempt from debts of the insured were held to be unconstitutional. To what extent, if any, the North Dakota legislature was influenced by these decisions we are not in a position to say. The enactment of the amendatory act, however, is conclusive evidence that some reason or reasons existed which, in the judgment of the lawmakers, made it desirable or necessary to make certain changes in the then existing statute. Whatever reason may have actuated the legislative action, the fact remains that

the lawmakers deemed it desirable or necessary to classify the policies to which the statute applied, and, as it were, limit the application of the statute to insurance policies or beneficiary certificates made payable to the personal representatives, the heirs, or the estate of the deceased; and that they further deemed it desirable to fix the meaning and legal effect of the terms "personal representatives," "heirs" or "estate," when used to designate beneficiaries in a life insurance contract.

It will be noted that the original section is all-inclusive. Given literal effect it applied to every life insurance policy and beneficiary certificate. Construed literally, it applied as well to policies made payable to the insured himself, his "personal representatives," "heirs" or "estate." While the statute probably was intended to apply only to insurance contracts, the avails of which in the absence of the statute would have become subject to the debts of creditors (McClure v. Johnson, 56 Iowa, 620, 10 N. W. 217), the language employed was of such sweeping character as to give rise to possible controversy. And the legislature, for reasons deemed sufficient, determined that the rule of the statute should be restricted and made applicable only to policies wherein the beneficiaries were designated by the terms, "personal representatives," "heirs" or "estate."

It is natural to assume that the lawmakers, having determined to limit the application of the statute to insurance policies and beneficiary certificates made payable to the "personal representatives," the "heirs" or the "estate" of the insured, also gave some consideration to the meaning and effect of these terms. And an examination of the then adjudicated cases must have disclosed to them that the use of these terms in life insurance contracts had given rise to much litigation; that there was considerable contrariety of opinion among the authorities as to the meaning and effect of these terms when used to designate beneficiaries in life insurance contracts, both as regards the persons included within the terms (37 C. J. pp. 565 et seq.; 4 Cooley, Briefs on Ins. pp. 3726 et seq.; 28 Century Dig. cols. 2377–2389; 11 Decennial Dig. § 583; notes in 30 L.R.A. 593, 609; 3 L.R.A.(N.S.) 904; and 32 L.R.A.(N.S.) 247) and, as to whether the persons included would share equally or take in the order and proportion fixed by the laws of succession. See 4 Cooley, Briefs Ins. p. 3742; 37 C. J. p. 587, § 353. In passing it may be noted that in Maixner v. Zumpf, 51 N. D. 140,

199 N. W. 183, it was earnestly contended that the statutes of descent and distribution do not control the distribution of the avails of a life insurance policy falling within § 8719; but that all persons within the class of heirs at law under the statute of descent and distribution are entitled to share equally in the avails of the policy.

We are of the opinion, therefore, that the primary objects sought to be accomplished by the legislature by the amendatory act of 1897 were:

(1) To specify definitely what life insurance contracts are intended to be covered by the statute; and

(2) To fix the meaning and effect of the terms "personal representatives," "heirs" or "estate" when used to designate beneficiaries in life insurance policies or beneficiary certificates, to the end that there might be a certain and definite rule to govern the disposition of proceeds of life insurance policies or beneficiary certificates in all cases where the insured, upon his death, left policies or beneficiary certificates falling within the terms of the statute.

We are further of the opinion, however, that there was no intention on the part of the legislature to create any vested interest in presumptive beneficiaries, or to restrict any right, which the insured had under then existing laws, to dispose of life insurance policies or the avails thereof. There is no suggestion in § 8719, that an insurance policy, or the avails of an insurance policy, made "payable to the personal representatives, heirs or estate" of the insured shall not be subject to disposition by the insured in any of the modes permitted under then existing laws. The section does not purport to cover that situation at all; it merely purports to apply where the insured dies leaving a policy or beneficiary certificate made payable as stated in the statute, and where the insured, during his lifetime, has made no disposition either by contract or will of the policy or the avails thereof.

Generally, a life insurance contract refers to and fixes the respective rights of three parties:—the insurer, the insured and the beneficiary. The primary intent of a contract of life insurance is that the insurance company shall make payment of the stipulated sum on the death of the insured. The question as to whom payment is due is a secondary one, and may be, and frequently is, contingent upon circumstances and even upon arrangements outside of the policy. 37 C. J. 564. The

obligations of the insurer, and the rights of the beneficiary and of the insured, are such as are imposed or conferred by the policy or contract of insurance. Whatever rights are not finally in the beneficiary are in the insured. 37 C. J. 378, 577.

The beneficiary in an "old line" life insurance policy in which there is no reservation of the right to change beneficiary, acquires a vested interest in the policy upon the consummation of the contract, and the insured can neither surrender the policy nor change the designation of the beneficiary or the disposition of the proceeds without the consent of the beneficiary named. 37 C. J. pp. 577 et seq.; 14 Cal. Jur. p. 581. But, where the life insurance policy reserves to the insured the right to change the beneficiary at will, the beneficiary acquires no vested interest in the policy or the avails thereof. 4 Cooley, Briefs on Ins. p. 3756; White v. United States (D. C.) 299 Fed. 855, 270 U. S. 181, 70 L. ed. 538, 46 Sup. Ct. Rep. 274. In the absence of special circumstances, the only interest of the beneficiary, prior to the death of the insured, is that of a mere expectancy of an incompleted gift, which becomes vested only on the death of the insured. 37 C. J. p. 579; 14 Cal. Jur. p. 583; Townsend v. Fidelity & C. Co. 163 Iowa, 713, L.R.A.1915A, 109, 144 N. W. 576. See also 4 Cooley, Briefs on Ins. pp. 3755, 3758. And as a general rule a life insurance policy made payable to the personal representatives or the estate of the insured is the property of the insured and subject to his control and disposition as such. Bank of Minden v. Clement, 256 U. S. 126, 65 L. ed. 857, 41 Sup. Ct. Rep. 408; 37 C. J. pp. 422, et seq.; 4 Cooley, Briefs on Ins. p. 3726. See also, Burton v. Farinholt, 86 N. C. 260. In the absence of a provision in such policy, or statute, to the contrary, the insured may dispose of the policy or the avails thereof by contract or by will, without notice to, or consent of, the person or persons who at that time occupy a relation which would entitle him or them to share in the proceeds of the policy in case of death of the insured. The National Bankruptcy Act recognizes that a policy of this kind is the property of the insured and that the cash surrender value thereof constitutes a part of his estate. Bankruptcy Act, § 70 (U. S. C. title 11, § 110); 2 Collier, Bankr. 13th ed. p. 1692. See also Hiscock v. Mertens, 205 U. S. 202, 51 L. ed. 771, 27 Sup. Ct. Rep. 488; Cohn v. Malone, 248 U. S. 450, 63 L. ed. 352, 39 Sup. Ct. Rep. 141.

It is argued that certain statements in the former decisions to the effect that the heirs at law of the insured "take by contract and not by descent" are in effect rulings that the insured has no property interest in policies made payable to his personal representatives, heirs or estate and, hence, has no power to dispose of such policies or the avails· thereof by will. In our opinion this argument is not well founded. The statements were made in answer to a contention that the avails of a policy falling within the purview of § 8719 become and are general assets of the estate of the decedent and subject to administration as such. It was pointed out that while the avails of an insurance policy falling within the purview of that section go to the heirs at law of the insured, such heirs do not receive the avails as a part of the general estate of the deceased but as beneficiaries under the life insurance policy. In all the former cases (except Finn v. Walsh, 19 N. D. 61, 121 N. W. 766, which involved fraternal beneficiary certificates) the court was dealing with a situation where the insured upon his death left life insurance policies falling within the purview of § 8719, and where the insured had made no disposition of the policies or the avails thereof. In other words, in all the former cases involving an "old line" life insurance policy, the court was considering a policy falling squarely within the provisions of § 8719 and, hence, by virtue of the terms of the policy and the provisions of that section, payable to the "heirs at law" of the insured. In each case the right of the persons, who were shown to be the "heirs at law" of the insured, to receive the avails of the insurance policy existed because at the death of the insured they occupied such relation to him as to make them his heirs at law under the laws of succession and, hence, beneficiaries under the policy. The avails of the policy did not go as assets into the general estate of the insured and were not distributed to the heirs at law as a part of the general estate of the deceased; but were distributed to them because the policy, interpreted in light of § 8719 supra, was payable to the "heirs at law" of the insured. So it was true, the heirs at law of the insured took because upon his death the avails of the policy belonged to them by virtue of.the stipulation of the insurance contract and the provisions of the statute. But it is equally true that they had.no contract rights in the policy or the avails thereof prior to the death of the insured. Their rights as beneficiaries .

under the policy became vested only upon the death of the insured; and until his death, the policy and all rights growing out thereof were his property.

There is nothing in § 8719, supra, indicating any intention on the part of the lawmakers to control the terms of a life insurance contract, or to restrict the right of the insured during his lifetime to dispose of the same or the avails thereof. The insured and the insurer are at liberty to make contracts of insurance in precisely the same manner and to the same effect as before the statute was enacted. The statute does not purport to concern itself with the terms or provisions of insurance contracts or to restrict the right of insurance companies to issue, or of insured persons to take, policies of insurance, made payable to such persons, and in such manner as the parties to the contract may agree. Nor does the statute purport to give to presumptive heirs or heirs at law of the insured any vested interest in policies or the avails of policies, made payable to the personal representatives, heirs or estate of the insured. In other words, the statute evidences no intention on the part of the legislature to divest the insured, while he lives, of the right to dispose of the policy or the avails thereof; and his power over the policy and the disposition of the avails thereof, during his life, is not at all affected by the act but continues as ample and unrestricted as before. Rison v. Wilkerson, 3 Sneed, 565; Williams v. Carson, 9 Baxt. 516; Gosling v. Caldwell, 1 Lea, 454, 27 Am. Rep. 774. The statute, by its express terms, purports to become effective only upon the death of the insured. It does not even purport to exempt insurance policies of the kind therein described or the cash surrender values thereof from the claims of creditors during the lifetime of the insured. In fact, the legislature subsequently deemed it necessary to enact another statute to accomplish this purpose. See Laws 1915, chap. 173. See also, Re Coughlin, 53 N. D. 188, 193, 194, 205 N. W. 16.

Section 8719 says that *"upon the death"* of the insured the avails of a life insurance policy or beneficiary certificate upon his life, "when made payable to the personal representatives of a deceased, his heirs or estate . . . shall not be subject to the debts of the decedent except by special contract, but shall be inventoried and distributed to the heirs or heirs at law of such decedent." The terms "heirs" or "heirs at law" as used in this statute are clearly intended to designate

those persons who answer this description at the death of the insured. Strictly speaking the terms "heir" and "heir at law" signify one who has succeeded to a dead ancestor, and are not applicable to one whose ancestor is living. 2 Bl. Com. 208; 2 Words & Phrases, 2d ed. p. 853; 29 C. J. p. 290. And where these words are used, they will, unless a contrary intention is shown, be assumed to designate those persons who answer that description at the death of the testator. 29 C. J. 291. While in a more general sense they are capable of being applied to persons whose ancestors are living, it is, we think, clear that the terms "heirs" and "heirs at law" as used in § 8719, are intended to designate those persons, and those persons only, who answer to this description at the death of the insured.

In the very nature of things the beneficiaries in a policy falling within the purview of § 8719, supra, can be ascertained only upon the death of the insured. Persons who at one time are heirs presumptive of the insured, under the statutes of descent and distribution, may, at another time, have ceased to occupy this position altogether. In other words, persons who at one time are heirs presumptive of the insured and hence presumptive beneficiaries under a policy, may shortly thereafter have ceased to occupy such a position; and their former position as presumptive heirs and presumptive beneficiaries may be occupied by some wholly different person or persons. Thus for instance, suppose a man whose parents are living, takes an insurance policy upon his life in the sum of $10,000, which is made payable to his estate. If he should die and leave no other property the proceeds of such policy would, under our laws of succession, all go to his father and mother as his heirs at law (Comp. Laws 1913, § 5743, subd. 2). If the father and mother should die and there are brothers and sisters, such brothers and sisters would automatically be substituted as those entitled to the proceeds of the policy upon the death of the insured. Id. subd. 3. If, thereafter, the insured should marry, the rights of the brothers and sisters would automatically end and his wife would become the presumptive beneficiary. Id. subd. 1. If, a child is born the wife and child would each become presumptive beneficiaries, entitled to share equally in the proceeds of the policy. If other children are born, the widow would be entitled to receive only one third of the proceeds and the rest would go in equal portions to the children. Id. subd. 1.

As has been said, § 8719, supra, indicates no intention on the part of the legislature to restrict the right of any person to contract freely, as regards life insurance, or to interfere with his power to dispose of life insurance contracts or the avails thereof otherwise subject to disposition by him. The great purpose of the statute as originally enacted was to exempt the avails of life insurance contracts from the claims of creditors of the insured, reserving however to the insured the right to provide by special contract that in case of his death the proceeds shall be available for the payment of a debt or debts of the insured. This original purpose was retained in the amendatory act of 1897; but the statute was limited in its application to policies made payable to the personal representatives, heirs or estate of the insured. In the amendatory act the legislature further fixed the meaning and legal effect of the terms "legal representatives," "heirs" or "estate" when used to designate beneficiaries in life insurance contracts. In order to carry out the original fundamental purpose of the statute, namely the exemption of the avails of such insurance contracts from the debts of the insured, the legislature provided, both in the original and the, amended act, that if, after the policy had been issued, the insured changed his mind and desired to render the avails of any such insurance contract subject to the claims of his creditors, he must manifest such purpose by means of a special contract.

The exemption feature, however, does not indicate a legislative intention to inhibit the insured from disposing of the policy or the avails thereof by contract or by will. Gosling v. Caldwell, 1 Lea, 454, 27 Am. Rep. 774; Williams v. Carson, 9 Baxt. 516; Miller v. Miller, 200 Iowa, 1070, 43 A.L.R. 567, 205 N. W. 870. In fact the legislature recognized that the insured during his lifetime has the right and power, without making any change whatever in the policy and without notice to, or consent on the part of, the insured or the presumptive beneficiaries under the policy, to control the disbursement of the avails of such contracts by means of a special contract with a creditor or creditors. In other words, § 8719 recognizes that the insured has the power to control the disposition of the avails of a life insurance policy made payable to his personal representatives, heirs or estate even to the extent of providing by special contract with a creditor or creditors that, upon the death of the insured, such avails

shall go to such creditor or creditors in payment of a certain debt or debts; and that such disposition of the avails may be made by a special contract, wholly outside of the policy and without making any change in its provisions.

Some argument has been advanced that § 8719, supra, contemplates that the avails of an insurance contract falling within the terms of that statute can be disposed of only by "special contract." The section is susceptible of no such interpretation. It does not say that the insured may not, during his lifetime, dispose of the policy or the avails thereof by contract or by will. The section does not purport to cover that situation at all. It does purport to exempt the avails of life insurance contracts of the kind specified therein from the claims of creditors of the decedent; and to that end it provides that avails of life insurance policies or beneficiary certificates falling within the purview thereof shall not be subject to the debts of the decedent except by special contract. The "special contract" requirement comes into operation only where after the death of the insured it is claimed that the insured intended and had sought to render the avails of the insurance policy subject to claims of creditors. The special contract requirement is applicable only to claims of creditors; and the mandate of the statute is that when after the death of the insured, a contest arises over the avails of a life insurance contract falling within the terms of the statute, such avails shall be exempted from all claims of creditors of the decedent and go to the persons entitled thereto free from all claims of creditors unless it is shown that the insured during his lifetime by special contract agreed that the avails of such insurance contract should be utilized for the payment of a specific debt or debts of some creditor or creditors. In other words, after the death of the insured, no part of the avails of an insurance contract falling within the terms of the statute can go to a creditor or creditors unless the creditor or creditors in behalf of whom the claim is made can point to some special contract entered into by the insured that the avails of such insurance contract shall be utilized for the payment of the debt or debts of such creditor or creditors. 25 C. J. p. 77; Larrabee v. Palmer, 101 Iowa, 132, 70 N. W. 100; Re Donaldson, 126 Iowa, 174, 101 N. W. 870. The special contract provision, however, is restricted solely to claims of creditors and was obviously inserted to make operative to the fullest

extent, the original and primary object of the statute, namely, the exemption of the avails of such life insurance contracts from the claims of creditors. This provision indicates no intention on the part of the legislature to restrict the right of the insured to make such disposition of the insurance contract or the avails thereof, either by contract or by will, as he might have made before the statute was enacted. Gosling v. Caldwell; Williams v. Carson; and Miller v. Miller,—supra.

Nor do the provisions in the insurance policy in suit relating to a change of beneficiary or assignment of the policy create any vested interest in the presumptive beneficiaries or restrict the right of the insured to dispose of the policy or the avails thereof by will. These provisions were inserted primarily for the benefit and convenience of the insurer and were not intended to create any vested rights in the presumptive beneficiaries or to limit the right of the insured to dispose of the avails of the insurance policy by will. 37 C. J. pp. 431, 432; 2 Cooley, Briefs on Ins. p. 1100; Opitz v. Karel, 118 Wis. 527, 62 L.R.A. 982, 99 Am. St. Rep. 1004, 95 N. W. 948.

The disposal by the insured of an insurance policy on his life by will is something quite different from an assignment of the policy (4 Joyce, Ins. § 2327a), or the change of beneficiary (Miller v. Miller, and Opitz v. Karel, supra); and the right to dispose of a policy or the avails thereof by will is not controlled or negatived by stipulations relating to assignments or change of beneficiary. When there is a change of beneficiary in, or assignment of, a policy made payable as prescribed by § 8719 the avails thereof are payable directly to the assignee or beneficiary. But, where there has been no change of beneficiary, or assignment of the policy, in accordance with the terms thereof, the insurance company is not required to ascertain what persons are entitled to receive the avails of the policy, and it fulfills all of its obligations under the insurance contract by paying the avails thereof to the administrator or executor of the estate of the insured; and such administrator or executor receives them for the person or persons to whom they belong. In other words, where there has been no assignment of the policy or change of beneficiary, the insurance company is not required to ascertain what persons are heirs at law of the insured, or whether the insured during his lifetime made dis-

position of the avails by special contract to some creditor or creditors, or whether he disposed of the same by will. All that the insurance company is required to do is to pay the avails to the executor, or the administrator of the estate.

It must be assumed that every person taking life insurance since § 8719, supra, took effect contracts with knowledge thereof; and that when he takes a policy made payable to his personal representatives, heirs or estate, the insured intends:

(1) That in case of his death, no part of the avails of such policy shall be subject to, or go to his creditors in payment of, his debts unless he, during his life, by special contract has provided to the contrary; and then only to the extent provided in such special contract or contracts.

(2) That in case of his death, without any other disposition made during his lifetime in any mode not inhibited by the provisions of the contract or by law, the avails of such insurance policy shall be paid to the executor, or the administrator of the estate of the insured and by him distributed to the heirs at law of the insured.

(3) That the presumptive heirs at law of the insured shall have no vested interest in the policy or the avails thereof during the lifetime of the insured; that the insured retains full and complete control over the policy and all rights growing out thereof, with full right and power to dispose of the policy or the avails thereof in any mode not inhibited by statute, settled rules of public policy, or provisions in the policy.

It follows from what has been said that § 8719, supra, does not inhibit an insured from disposing by will of an insurance policy upon his life, which was made payable to his personal representatives, estate or heirs, or the avails of such policy; and that the insured had the right to dispose of the insurance policy in suit by will; also, that the former decisions of this court, construing § 8719, have announced no rule to the contrary.

It has been suggested, however, that certain language in Finn v. Walsh, 19 N. D. 61, 121 N. W. 766, supra, is in effect a holding that an insured is without power to dispose by will of a life insurance contract, or the avails of a life insurance contract, falling within the provisions of § 8719. It is a well-settled rule, announced by the highest court in the land, that "the positive authority of a decision is coextensive only with the facts on which it was made." Ogden v. Saun-

ders, 12 Wheat. 333, 6 L. ed. 647. We have epitomized the decision in Finn v. Walsh. It should be borne in mind that in that case the court was not dealing with an "old line" life insurance policy, but with fraternal beneficiary certificates. The authorities generally draw certain distinctions between beneficiary certificates and so-called "old line" life insurance policies. See 37 C. J. pp. 577, 578; and authorities collated in note 17(h) ; 1 Bacon, Ben. Soc. § 237; 2 Cooley, Briefs on Ins. p. 1082; note in 12 L.R.A. p. 210. See also 4 Cooley, Briefs on Ins. pp. 3721 et seq. Whether all the distinctions drawn are sound or unsound (see 12 Columbia L. Rev. pp. 551–553.) We need not determine, for the statute under which the beneficiary certificates involved in Finn v. Walsh were issued clearly placed beneficiary certificates on quite a different footing from "old line" life insurance policies as regards the rights and interests of the insured in the insurance contract and the avails thereof. By the express terms of that statute, a fraternal beneficiary certificate could not provide for payment for physical disability to any member until he or she had reached the age of seventy years; and the statute further provided that death benefits under such certificate should be made payable only "to the families, heirs, blood relatives, affianced husband or affianced wife of, or to persons dependent upon, the member." Laws 1901, chap. 90, § 1. It seems quite clear that the insured had no interest or property in the benefit arising under a beneficiary certificate issued under this statute until he had reached the age of seventy years. 1 Bacon, Ben. Soc. § 237; Werner v. Modern Woodmen, 67 Neb. 233, 61 L.R.A. 603, 108 Am. St. Rep. 634, 93 N. W. 397, 2 Ann. Cas. 660; Mullen v. Reed, 64 Conn. 240, 24 L.R.A. 664, 42 Am. St. Rep. 174, 29 Atl. 478. It was the avails of these beneficiary certificates the court had in mind when it said that the fund "being no portion of the estate of Walsh, he could not transfer the same by will."

In this connection it should be noted that while the decision in Finn v. Walsh makes no specific reference to the statute under which the beneficiary certificates were issued, or to the distinction under then existing laws between "old line" life insurance policies and fraternal beneficiary certificates, such distinction was in fact recognized by the district court, and by counsel who presented the cause on appeal to this court. For, while the decision in the case makes no reference

thereto, the briefs and abstract on appeal therein show that Martin A. Walsh (the decedent in that case) upon his death left, not only the two beneficiary certificates mentioned in the decision but also, an ordinary "old line" life insurance policy made payable to his "estate." And both the county court and the district court held that the provision in his will to the effect that "I give and bequeath unto Mary E. Finn and Mary M. Carney . . . all my life insurance of every name and description in equal shares" was effective as applied to such "old line" policy and passed the avails thereof to the legatees named in the will. The correctness of this ruling was not challenged in this court, and, consequently, no reference was made to such insurance policy in the decision in the case. It is apparent, however, that counsel for both parties as well as the learned district court drew a distinction between the "old line" life insurance policy involved and the two fraternal beneficiary certificates as regards the rights of the insured to dispose of the same or the avails thereof by will.

In Farmers' State Bank v. Smith, 36 N. D. 225, 162 N. W. 302, it was said:

"Even after the enactment of § 8719, a testator could still provide by special contract that the proceeds of life insurance policies payable to his heirs or estate should be subject to his debts, and then transfer or *will* the remainder."

In Talcott v. Bailey, 54 N. D. 19, 208 N. W. 549, the question as to whether a policy, or the avails of a policy, payable to the estate of the insured may be transferred by will was treated as an open one and the case was decided on the assumption that they might be so transferred. The final word of this court in that case was: "Neither the statute (Comp. Laws 1913, § 8719), nor any decision of this court limits, or attempts to limit, the right of the insured and the insurer to contract as they may see fit with respect to the proceeds of the policy or its transfer by will or assignment."

Do the provisions of the will in suit entitle Ethel J. DeViney to retain as her own individual property, all the avails of the life insurance policy? In our opinion this question must be answered in the affirmative. In fact, no serious question seems to be raised as to the sufficiency of the provisions of the will and the intention of the testator

to bequeath to Ethel J. DeViney the life insurance policy, provided he had the right and power to dispose of the same by will.

A will is to be construed according to the intention of the testator (Comp. Laws 1913, § 5685), and technical words are not necessary to give effect to any species of disposition by will (Comp. Laws 1913, § 5696). Since § 8719, supra, became effective, a person who takes a life insurance policy in this state, made payable to his personal representatives, his heirs, or estate, evidences an intention that in case of his death, without any prior disposition of the policy or the avails thereof, such avails shall go to, and be distributed among, his heirs at law in accordance with the laws of succession, free and clear of all claims. But as has been said, in the absence of any provision in the policy to the contrary, the insured further evidences an intention that during his life he retains full control over the policy and may make any disposition he sees fit to make of such policy which is not inhibited by statute, by settled rules of public policy, or by provisions in the contract of insurance itself. Of course, the intention of the insured, manifested at the time the policy is issued, will be deemed to continue until the insured, in some proper manner clearly and explicitly, indicates that it is his intention and purpose to provide that the avails of the policy shall be distributed to persons other than to his heirs at law in accordance with § 8719. And although the insured has power to dispose by will of a policy or the avails of a policy, made payable to his personal representatives, heirs or estate, there is no presumption that he has made any such disposition unless the intention so to do is manifested in his will by language specifically and directly to that effect; and such intention is not to be inferred from general provisions in his will relating to the disposition of "property" or "estate" but making no specific reference to the life insurance policy, or the avails thereof. Talcott v. Bailey, supra; Greeno v. Greeno, 23 Hun, 478; Hathaway v. Sherman, 61 Me. 466; Hamilton v. McQuillan, 82 Me. 204, 19 Atl. 167; Golder v. Chandler, 87 Me. 63, 32 Atl. 784; Duvall v. Goodson, 79 Ky. 224; Maryland Mut. Ben. Soc. v. Clendinen, 44 Md. 429, 22 Am. Rep. 52. See also Arthur v. Odd Fellows' Beneficial Asso. 29 Ohio St. 557; Vance v. Park, 7 Ohio S. & C. P. Dec. 564, 7 Ohio N. P. 138; Marifjeren v. Farup, 51 N. D. 78, 199 N. W. 181.

In the case at bar the intention of the insured was expressed clearly and explicitly. In the most unequivocal terms he indicated that it was his purpose to bequeath the life insurance policy in question to his sister Ethel J. DeVincy, to the exclusion of all those who would have been entitled to share in the avails of such policy as his heirs at law in the absence of such bequest.

It follows from what has been said that the trial court was correct in holding that the avails of the life insurance policy involved in this action belong to Ethel J. DeViney as her own individual property and that the other heirs at law of Alfred Jorgensen, deceased, have no interest therein whatever.

Judgment affirmed.

NUESSLE, Ch. J., and BIRDZELL, BURKE, and BURR, JJ., concur.